Rebecca A. REAVIS, Appellant
(Plaintiff),

v.

Calvin D. REAVIS, Appellee (Defendant).

No. 97–209.

Supreme Court of Wyoming.

March 20, 1998.

Rhonda Sigrist Woodard of Burke, Woodard & O'Donnell, P.C., Cheyenne, for Appellant.

Marc C. Thompson of Webster Law Office, Cody, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant contests the district court's order alternating physical and legal custody of three children between appellant and appellee six times a year. Appellant also appeals the denial of her request for temporary spousal support. Finding no record evidence to support the district court's custody arrangement, and overwhelming evidence that the district court's order is contrary to the children's best interests, we reverse and remand with instructions.

## I. ISSUES

Appellant, Rebecca A. Reavis (Mother), presents two rather lengthy issues for review. We summarize the issues as follows:

1. Was the divided custody arrangement ordered by the district court contrary to the best interests of the children?

2. Did the district court abuse its discretion when it ignored the fact that Rebecca Reavis was the primary caregiver to the three children and her care was undisputedly exemplary?

3. Did the district court abuse its discretion in refusing to award Rebecca Reavis temporary spousal support?

Appellee, Calvin D. Reavis (Father), responds with these issues:

1. Was the trial court acting within its discretion by establishing a shared custody arrangement for the parties' minor children?

2. Was the trial court acting within its discretion by denying to award alimony to the former wife?

## II. FACTS

After Mother and Father graduated from the University of Wyoming in 1979, they married in July and settled in Cody, Wyoming. Father began employment with Marathon Oil Company, and continued that employment through the time of the divorce. Mother worked for one year in an entry-level clerical position and thereafter worked full-time in the home; a decision which Father fully supported.

The parties' first son was born in 1986, and twin sons arrived in 1989. From 1986 until 1995, Mother and Father agreed that it was in the children's best interests for Mother to stay home in order to be a full-time caregiver to the children. Over the course of the marriage, the parties moved several times in order to facilitate Father's progress in his career. The couple returned to Cody approximately two years before they separated.

In 1995, recognizing that the marriage was in trouble, Mother took action to return to employment outside the home, and obtained a Wyoming real estate license. Mother chose this line of work because of her interest in real estate and because it would provide her flexibility to spend time with the children before and after school. Again, Father approved of Mother's choice to enter this field of employment.

After marriage counseling and mediation failed to resolve the differences between Mother and Father, Mother was advised that the best interests of the children would be furthered if the couple ceased living in the same residence. Upon Father's refusal to move, Mother relocated with the children within Cody, and filed for divorce. By ex parte order, Mother received temporary custody of the children in October 1995, which Father challenged in November. On February 5, 1996, the parties signed a stipulation resolving the temporary custody and child support issues, agreeing to continue the arrangements already in place. Mother retained primary custody, while Father received visitation on alternating weekends, one afternoon or evening per week, and six weeks during the summer vacation period. Father was to pay the presumptive child support of $1,300.00 per month and maintain the children on his health insurance. The district court approved this stipulation on February 8, 1996.

Prior to trial, the parties had reached a stipulation as to the division of the marital property. At the hearing on November 4, 1996, Father sought primary custody, or in the alternative, joint custody with physical custody alternating every year. Mother requested primary custody of the children with liberal visitation for Father, and temporary spousal support for a period of three years. During three days of trial, the district court heard testimony from numerous witnesses, including Mother, Father, Father's parents, teachers, friends, and Father's expert, Larry Andrews, who had acted as mediator for the parties prior to the filing for divorce, and later was Father's counselor.

On November 8, 1996, ruling from the bench, the district court ordered that each party would have custody of the children during one-half of the summer and during alternating periods every nine weeks during the school year. The children's primary place of residence was that of the primary custodial parent during each period. Visitation was ordered one evening per week and every other weekend, alternating on the same schedule as the primary custody. The district court underscored that it was not ordering joint custody, but a shared custody arrangement. However, the district court also ordered the parties to cooperate and consult with each other regarding decisions affecting the children and to choose medical and health care professionals together.

Mother's request for alimony was denied, the district court finding that "the property settlement tends to put the parties on substantial footing, other than their current earning abilities." The district court entered a final Nunc Pro Tunc Decree of Divorce on March 28, 1997. This timely appeal followed.

## III. STANDARD OF REVIEW

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer,* 931 P.2d 251, 253–54 (Wyo.1997); *Triggs v. Triggs,* 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo,* 907 P.2d 348, 352 (Wyo.1995). It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. *Scherer,* 931 P.2d at 254; *Rowan v. Rowan,* 786 P.2d 886, 890 (Wyo.1990); *see also Gurney v. Gurney,* 899 P.2d 52, 55 (Wyo.1995) and *Fink v. Fink,* 685 P.2d 34, 36 (Wyo.1984). The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink,* 685 P.2d at 36.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther,* 888 P.2d 1250, 1252 (Wyo.1995) (*quoting Dowdy v. Dowdy,* 864 P.2d 439, 440 (Wyo.1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs,* 920 P.2d at 657; *Cranston v. Cranston,* 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones,* 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' " *Triggs,* 920 P.2d at 657 (*quoting Vanasse v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993)).

## IV. DISCUSSION

### A. Custody

Mother claims the district court's division of custody is an abuse of discretion because it is unsupported by evidence and because the district court failed to consider Mother's role as the primary caregiver to the children. The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best interests of the children. Wyo. Stat. § 20–2–113 (Repl.1994) provides, in relevant part:

(a) In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. The court shall consider the relative competency of both parents and no award of custody shall be made solely on the basis of gender of the parent. If the court finds that both parents have shown the ability to act in the best interest of the child, the court may order any arrangement that encourages parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage. * * *

* * *

(p) The court may award custody under this section in accordance with subsection (a) of this section. Custody shall be crafted to promote the best interests of the child, and may include any combination of joint, shared or sole custody as the circumstances may require.

The great discretion given to the district court in fashioning family relationships encompasses one of the most difficult and demanding tasks assigned to a trial judge. This life-altering decision is perhaps most exacting in cases such as this, where it is apparent that both parents love their children and are fit and competent to have custody. Every case, however, requires careful weighing of relevant factors, looking to the unique and individual family relationships, in order to reach a resolution in the best interests of the children in that family.

To determine whether a district court has abused its discretion, we must rely on the district court's articulation of the factors which were considered and how those factors support its conclusions.

To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should

spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.

Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635, 665–66 (1971). Unfortunately, we are provided scarce explanation for the custody arrangement ordered in this case; one which substantially deviates from the requests of the parties and is unique to the experience of this court.

Looking to the district court's oral rulings[1] regarding custody, the district court began by noting that the children "have two good parents, and the decision is made in what appears to be in their best interests." The district court then detailed the shared custody arrangement and encouraged the parties to provide visitation in addition to the designated weekends and one evening per week. The district court continued:

> Now, this may sound like a lot of going back and forth, but actually it isn't that much. From what I've already heard the kids are already going back and forth a lot right now. They love both parents. They are comfortable in either home. They both live in the same community. Both testified here in Court that they have no plans to move or change their residences. So I'm trying to devise this in such a way that neither parent has the upper hand over the other, but more importantly from the standpoint of the kids, that they maintain an on-going, strong and healthy parent to child relationship between both mother and father.

We have repeatedly stated that divided custody is not favored by this court. *Martin v. Martin*, 798 P.2d 321, 322 (Wyo. 1990); *Feaster v. Feaster*, 721 P.2d 1095, 1098 (Wyo.1986); *Fink*, 685 P.2d at 36 n. 1;

*Forbes v. Forbes*, 672 P.2d 428, 430 (Wyo. 1983); *Ayling v. Ayling*, 661 P.2d 1054, 1055 n. 3 (Wyo.1983). There are several reasons for our reluctance to embrace the concept, but first and foremost is the recognition that stability in a child's environment is of utmost importance to the child's well-being, and divided custody places the stability of a child's environment at risk. Whether termed "divided," "shared," or "joint" physical custody, "a measure of instability is inherent" in the arrangement. *Gurney*, 899 P.2d at 55.[2] We do not dispute that there may be cases where joint or shared physical custody may approximate the former family relationships more closely than other custodial arrangements, or for other good reason may be in the best interests of the children. However, divided physical custody may not be indiscriminately substituted for an award of sole custody to one parent in order to appease one party.

The district court stated that it ordered divided custody, in part, to promote "an ongoing, strong and healthy parent to child relationship between both mother and father." There is nothing in the record, however, which supports the notion that transferring the children from one household to the other six times a year is necessary to maintain their current relationship with both parents. Neither is there evidence that such an arrangement would improve these relationships in the future.

During the year preceding the hearing, Mother had sole custody of the children. During that time, Father's relationship with the children did not deteriorate, but improved. Father admitted that during the separation he devoted more time to the children than when the marriage was intact. He also stated that Mother was flexible about arranging visitation to his schedule and that

---

1. The final Amended Nunc Pro Tunc Decree of Divorce is silent as to the factors supporting shared custody other than the custody arrangement is "[i]n the best interests of the minor children * * *."

2. In the past, we have discussed the importance of stability for a child in the context of a request to modify a custody order, recognizing our standard requiring "a substantial change of circumstances" appropriately protects the stability cre-

ated by a permanent custody order. *Gurney*, 899 P.2d at 54. Although the "substantial change of circumstances" standard is not applicable in the determination of an original custody order, the district court must nonetheless consider each child's past experiences to determine his or her best interests in the future. When a child is in a stable and nurturing environment, that arrangement should not be unduly disrupted absent good reasons for doing so.

Mother assisted the children's relationship with Father. Mr. Andrews, Father's expert, testified that shared physical custody does not necessarily help keep the relationship with both parents strong any more than other custody options.

Neither is there evidence that divided custody more closely approximates the family relationships at any time prior to the court's order. The district court's comment that the children were already "going back and forth" has no basis in the record. All the testimony reflects a traditional visitation schedule with Father. The record is replete with testimony, however, which established Mother as the primary caregiver of the children throughout their lives, and her exemplary ability to nurture and care for the children. There is nothing which supports the conclusion that the divided custody arrangement would not be a drastic change from what the children had known before.

The district court's determination that the children were "comfortable" in both homes does not sufficiently address the disruption which unavoidably results from moving the children's primary residence four times during the school year. Although it is true that the parents intended to remain in the same town, the district court did not consider the children's dependence on Mother as the primary caregiver, which was consistent throughout the children's lives. The district court offered no explanation regarding the children's ability to handle the sweeping changes imposed, nor did the district court express why such changes would be in *the children's* best interests.

 The success of a joint or shared custody arrangement hinges on the extent to which the parents are able to communicate and agree on the matters relevant to the children's welfare. *Gurney*, 899 P.2d at 54–55. As to the communication between these parties and their ability to work together, the district court stated:

> Part of what I'm doing, I'll admit, comes really close to the idea of joint custody, but it falls short of that because in the final analysis the parent providing the primary residence at the time is the primary custodian. But, what you really have to do and

this was mixed testimony about this, and I know [Mother] said she didn't think [Father] could agree and cooperate, but I read a couple letters that [Mother and Father] wrote that were in evidence, which were only for the good and you were working very hard on that, and you did come to agreement on the property issue and some other issues.

> I guess what I'm doing is putting my money on this proposition that if I get you past the gap that you couldn't bridge, that was the question of custody and visitation and give that to you in a Court order, you both are big enough, smart enough, and compassionate enough people to take this order and cooperate with each other and make it work because that's what the kids need you to do.

Apparently uncertain whether the parties would take to heart its words of encouragement for future cooperation, the district court concluded by adding a little salt with the sugar:

> The other thing I need to mention is that always, always, on matters of importance in school and church, medical care, and the like, don't even think of making these important decisions by yourself. You can't do it. * * * You discuss those things. You must. You may not want to. You may be reluctant to, but if you don't I'll tell you to come back and enjoy your time in Court every year, and that is to go off on your own tangent, make your own decision without regard to the other regarding the children, and I'll guarantee you I will be seeing you often and it will cost you a lot, more in terms of emotions, bitterness, anger than in terms of money.

> So I hope that you will not do that to the children. I hope you won't do it to yourselves.

> I can't think of a couple I have ever had in Court before that I can look at and say with more meaning, I think you can do this. I know that you can.

We fail to find record support for the district court's optimistic evaluation of the parties' future ability to cooperate. While it is true that the parties did reach agreement

regarding temporary custody and a property settlement, the record indicates that agreement was achieved only after lengthy negotiation. Moreover, not only did the parties fail to agree on a permanent custody arrangement, but the transfer of favorite toys and clothing, inherent in the arrangement ordered by the district court, was a major source of contention during the separation period. While these problems may abate with resolution of the custody issues, "[b]lind hope that a joint custody agreement will succeed, or that forcing the responsibility of joint decision-making upon the warring parents will bring peace, is not acceptable." *Taylor v. Taylor*, 306 Md. 290, 508 A.2d 964, 972 (1986). The fact that the parties finally reached agreement on property issues is insufficient to conclude that they are able to communicate on the level necessary to resolve the custodial details.

The district court's ruling makes no mention of the three individual children that are affected by this order, nor does the district court attempt in any way to address their individual needs. Mr. Andrews testified regarding the difficulties children experience when they are required to move from one home to the other. When asked about annually alternating physical custody, the arrangement proposed by Father, Mr. Andrews stated that such arrangements can be very disruptive due to a lack of consistency in scheduling, discipline, and contact with playmates. Loyalty conflicts experienced by children, which arise in many custody situations, can be exacerbated when the children are shifted from one environment to the other. Although Mr. Andrews found Father to be capable and caring, he recommended Mother be given primary custody with visitation by Father "as close to fifty percent * * * as is humanly possible."

The problems for children who are required to alternate between residences has been recognized by many courts. *In re Marriage of Swanson*, 275 Ill.App.3d 519, 212 Ill.Dec. 62, 656 N.E.2d 215, 218 (1995) (constantly shifting children between houses is detrimental—children need a home base); *Davis v. Davis*, 63 Ill.App.3d 465, 20 Ill.Dec. 437, 380 N.E.2d 415, 418 (1978); *In re Marriage of Hickey*, 386 N.W.2d 141, 143 (Iowa App.1986); *Brisco v. Brisco*, 713 S.W.2d 586, 590 (Mo.App.1986). Implicit in the authorization to award divided custody is that the court do so after becoming reasonably satisfied that for the child the positive aspects outweigh the negative.

Here, there is no evidence to support the conclusion that the transfer of custody six times a year affords any benefit to these children. To the contrary, it is uncontested that the children were well-behaved, well-adjusted, and performing at above-average levels at school throughout the time that Mother had primary custody of the children. Father's relationship with the children improved under this arrangement. In other words, the evidence points to only one reasonable conclusion: the temporary custody arrangement in place for almost a year promoted the best interests of these children. No evidence was presented at the hearing which justified the changes ordered by the district court.

The district court's order, calculated to avoid a parental "upper hand," appears to stem from the belief that splitting the prize down the middle is the fairest means to resolve an impasse. The district court's ruling focuses on the abilities of the parents to pull off what might be fairly characterized as a social experiment. We believe that social experimentation is best left to volunteers and firmly reject the indiscriminate resolution of a custodial dispute via mathematical equity.

The children's best interests are unquestionably promoted by the continuance of Mother's primary nurturing role, with Father continuing to exercise liberal visitation. The order of the district court is reversed and the matter is remanded with instruction to award primary custody to Mother.

### B. ALIMONY

Based on the substantial discrepancy in Mother's earning capability compared to that of Father, Mother requested an award of alimony for a period of three years. She maintains that the district court abused its discretion in denying her request.

█ Wyo. Stat. § 20-2-114 (1997) provides:

In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

The decision for any award of alimony is vested within the responsible discretion of the district court. *Muller v. Muller*, 838 P.2d 198, 200 (Wyo.1992). We have said that "in making a just and equitable settlement, judicial discretion is not a reward or punishment but simply fairness." *Id.* Although alimony may not be favored under Wyoming case law, *Broadhead v. Broadhead*, 737 P.2d 731, 739 (Wyo.1987); *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1269 (Wyo.1978) (McClintock, J., dissenting); *see also Grosskopf v. Grosskopf*, 677 P.2d 814, 821 (Wyo. 1984) and *Young v. Young*, 472 P.2d 784, 786 (Wyo.1970), it is specifically authorized by statute and recognized to be appropriate under the proper circumstances.

█ The purpose of alimony is to provide a post-divorce substitute for the support provided to a spouse during the marriage. *Sellers v. Sellers*, 775 P.2d 1029, 1032 (Wyo. 1989). "The objective criteria for an award of alimony include the ability of the payor spouse to pay and the necessity of support for the payee." *Id.* In determining whether alimony is appropriate, child support, alimony, division of property and other financial matters must be considered together. *Smith v. Smith*, 704 P.2d 1319, 1322 (Wyo.1985); *Klatt v. Klatt*, 654 P.2d 733, 738-39 (Wyo. 1982).

In this case, there is no doubt that there was a substantial difference in the parties' earning abilities at the time of the hearing. Having spent the last fifteen years working full-time at home, Mother entered the field of real estate in 1995. Testimony revealed that it takes two to three years to "be up and running" as a real estate agent, and the average yearly income at that time would be $15,000.00 to $20,000.00. While Mother earned $2,300.00 from January through October 1996, Father's annual income was over $80,000.00. During the separation, Mother supported herself and the children with child support payments supplemented by loans from her parents. The property division was essentially a 50/50 division with Mother receiving approximately $100,000.00 as her share of the home, investments and personal property, plus half the retirement funds through a Qualified Domestic Relations Order.

█ An award of maintenance involves an evaluation of the financial needs of both parties and is necessarily affected by a determination of child custody. *In re Marriage of Swanson*, 212 Ill.Dec. at 67-68, 656 N.E.2d at 220-21. Given our disposition of the custody issues, the changed circumstances of the parties may affect the district court's assessment of Mother's need for maintenance. We therefore vacate the district court's decision regarding alimony and remand for reconsideration.

## V. CONCLUSION

The district court's order mandating divided custody is unsupported by the evidence. To the contrary, the evidence presented results in only one reasonable conclusion. The children's best interests are served by awarding primary custody to Mother, with liberal visitation for Father. We therefore reverse the order of the district court and remand for disposition in accordance with this opinion. Given that the determination of alimony is inextricably bound to a custody determination, we vacate this portion of the district court's order and remand for reconsideration.