Lori Lynn RAYMOND, Appellant (Defendant),

v.

Robert Allen RAYMOND, Appellee (Plaintiff).

No. 97–134.

Supreme Court of Wyoming.

March 23, 1998.

Rhonda Sigrist Woodard and Carrie Hesco of Burke, Woodard & O'Donnell, P.C., Cheyenne, for Appellant (Defendant).

Colin M. Simpson of Simpson, Kepler & Edwards, LC, Cody, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN & LEHMAN, JJ.

MACY, Justice.

Appellant Lori Raymond (the wife) appeals from the divorce decree which was entered on January 2, 1997. In that decree, the trial court granted Appellee Robert Raymond (the husband) the primary custody of the parties' minor child and declined to award spousal support to the wife.

We affirm in part, reverse in part, and remand.

## ISSUES

The wife presents the following issues for our review:

I. Did the district court abuse its discretion when it awarded primary custody of [the child] to [the husband]?

A. Were the findings of the court inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence?

B. Did the court abuse its discretion when it ignored the fact that [the wife] was the primary caregiver of [the child], both prior to the divorce proceedings and during the seventeen month pendency of these proceedings?

II. Did the court err in refusing to award [the wife] child support during the years prior to the child attending school, where [the wife] will have her fifty percent of the time?

III. Did the district court abuse its discretion in refusing to award [the wife] spousal support?

## FACTS

The husband and the wife married each other on February 14, 1992, in Greer, Arizona. The wife had a child from a previous marriage, and one child was born into this marriage on October 14, 1994. The parties began discussing a separation or divorce in January 1995 when their relationship became violent.

The husband sought counseling for himself and the wife. Their relationship seemed to improve as a result of the counseling; however, it erupted again in April 1995. The husband filed a complaint, seeking a divorce and custody of the parties' minor child, and a petition for temporary child custody, attempting to prevent the wife from taking the child out of Wyoming. The trial court awarded temporary custody to the husband.

The wife petitioned the trial court to dissolve the order granting temporary custody to the husband and asked that temporary custody of the minor child be awarded to her. She also filed an answer and a counterclaim, requesting that she be granted a divorce from the husband, that the marital property be equitably divided, and that she be awarded custody of and support for the child. After holding a hearing, the trial court dissolved the temporary custody order. The child remained with the wife, and the husband was granted liberal visitations until the divorce proceedings concluded.

After a bench trial, the trial court, among other things, awarded primary custody of the child to the husband and granted reasonable visitation rights to the wife, ordering the parties to share physical custody of the child until she reaches school age. At that time, the child will remain in the husband's custody during the school year, and she will be with the wife during the summer months.

The trial court also ordered the wife, as the noncustodial parent, to begin paying the minimal amount of support permitted by the statute when the child reaches school age. The trial court declined to award spousal support to the wife. The wife appeals to this Court.

## STANDARD OF REVIEW

We will not overturn a trial court's decision regarding child custody and visitation, child support, and spousal support unless the record demonstrates that a procedural error occurred or that the trial court abused its discretion. *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo.1997). A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo.1995). In determining whether the trial court abused its discretion, we must decide the ultimate issue of whether or not the court could have reasonably concluded as it did. *Jacobs v. Jacobs*, 895 P.2d 441, 442 (Wyo.1995).

## DISCUSSION

### A. Custody

The wife contends that the trial court abused its discretion when it awarded primary custody of the child to the husband. She maintains that the trial court's findings were inconsistent with the evidence and contrary to the great weight of the evidence and that the trial court did not consider the fact that she was the primary caregiver prior to the divorce proceedings.

When a parental custody matter is being determined, the primary consideration is the best interests of the child. *Scherer*, 931 P.2d at 254. "[T]he 'goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children.'" *Love v. Love*, 851 P.2d 1283, 1287 (Wyo.1993) (quoting *Leitner v. Lonabaugh*, 402 P.2d 713, 720 (Wyo.1965)). *See also* Wyo. Stat. § 20–2–113(a) (Supp.1996) (amended 1997). What is in the best interests of a child is a question of fact to be resolved by the trial court. *Scher-*

*er,* 931 P.2d at 254. In deciding that question, the trial court must weigh the relevant factors. *Gurney v. Gurney,* 899 P.2d 52, 55 (Wyo.1995).

Sufficient evidence is present in the record before us to show that the trial court considered the relevant factors in determining the best interests of the child. In its decision letter, the trial court stated in pertinent part:

Both of these parties are young and intelligent; both of them have their strengths and weaknesses. Each of them potentially has a great deal to offer to this child, and the decision of this Court is couched in the dominant consideration of the best interest of [the child]. It is in [the child's] best interest that she have a primary custodial parent who will be a strong and positive role model, will provide her with stability, security and safety in a home. She will need a parent who will take the time and attention that will be required to help her cope with the added problem in her life of being a child of divorced parents, see to it that she maintains a strong and positive relationship with the non-custodial parent, and see to it that others in her primary household and constellation of family and friends do the same. She needs a primary custodial parent who is willing to obtain professional help in striving for these goals; above all, she needs a parent who will love her and care for her, and make it a point always to find time for her and look after her needs, unbegrudgingly and without complaint, even though it may hurt and require sacrifice.

The parties presented a significant amount of evidence to the trial court. At the trial, the wife described her role as being the primary caregiver who was generally responsible for the day-to-day care of the child in the husband's absence. She testified that the husband was not involved in taking care of the child; that he refused to go with her to the child's doctor's appointments; that he was intimidated by and felt awkward around the child because she was an infant; and that he did not know how to take care of the child.

The husband testified, however, that he had a loving relationship with the child; that he fed her, burped her, held her, played with her, and put her to bed in the evenings after he got home from work; and that he took care of her in the mornings before he went to work. He also testified that the wife swore in front of the child and threw temper tantrums. He described a couple of incidents in which the wife became very angry and engaged in violent behavior towards him. Additionally, the husband suggested that the wife frequented the bars and stayed out late while he stayed at home and took care of the child. The husband also described the wife's interaction with her child from her previous marriage. He stated that she disciplined that child by yelling, screaming, threatening, and spanking him. The wife's expert witness verified that the wife had difficulty controlling and parenting her child. The husband explained that the poor relationship between the wife and her child was one of the reasons why he was seeking custody of the parties' child.

The trial judge was in the best position to assess the credibility of the witnesses and weigh their testimony. *Goff v. Goff,* 844 P.2d 1087, 1092 (Wyo.1993). We, therefore, accord considerable deference to his findings. *Brown v. State,* 944 P.2d 1168, 1170 (Wyo. 1997). Although some of the evidence was conflicting with regard to the husband's parenting skills, sufficient evidence showed that he was a fit parent and capable of adequately caring for the child.

As the trial court indicated in the decision letter, it considered which parent could offer the child security and stability. Although the trial court considered the wife's role as a primary caregiver in determining what was in the best interests of the child, the other factors which were considered by the trial court ultimately weighed in the husband's favor; i.e., the husband's willingness to get help through counseling to improve his parenting abilities, the emotional stability he could offer the child, and the likelihood that he would promote an ongoing relationship between the child and the wife.

The trial court did not exceed the bounds of reason under the circumstances of this case. *Pinther,* 888 P.2d at 1252. We hold,

therefore, that the trial court did not abuse its discretion when it awarded primary custody of the child to the husband.

**B. Child Support**

 The wife claims that the trial court erred by failing to award her child support during the years that she will have physical custody of the child fifty percent of the time. We agree. "[C]hild support is for the benefit of the children as [a parent's] obligation to contribute to the upbringing of [the] children." *Macy v. Macy,* 714 P.2d 774, 777 (Wyo.1986).

The statutory child support guidelines provide a means for calculating the amount of child support a parent is responsible for contributing. WYO. STAT. § 20–6–302(a) (1997) provides:

> (a) The presumptive child support established by W.S. 20–6–304 shall be rebuttably presumed to be the correct amount of child support to be awarded.... *Every order or decree* providing for the support of a child *shall set forth the presumptive child support amount* and shall state whether the order or decree departs from that amount.

(Emphasis added.) The guidelines consider the combined income of both parents and the number of children that the child support will benefit. WYO. STAT. § 20–6–304(a) (1997). The guidelines also provide for joint presumptive support when each parent has physical custody of the child:

> (d) When each parent keeps the children overnight for more than forty percent (40%) of the year and both parents contribute substantially to the expenses of the children in addition to the payment of child support, a joint presumptive support obligation shall be determined by use of the tables. After the joint presumptive child support obligation is derived from column three of the tables, that amount shall be divided between the parents in proportion to the net income of each. The proportionate share of the total obligation of each parent shall then be multiplied by the percentage of time the children spend with the other parent to determine the theoretical support obligation owed to the other parent. The parent owing the greater

amount of child support shall pay the difference between the two (2) amounts as the net child support obligation.

WYO. STAT. § 20–6–304(d) (1997).

Although the trial court granted primary custody of the child to the husband, it directed that the wife and the husband will alternate the child's physical care every four months until the child starts attending school. Under this arrangement, one year the wife will have physical custody of the child for approximately sixty-six percent of the year, and the next year the husband will have physical custody of the child for approximately sixty-six percent of the year. According to the support guidelines, each parent is entitled to receive presumptive support for the periods that he or she has the child overnight for more than forty percent of the year, and "a joint presumptive support obligation shall be determined by use of the tables." Section 20–6–304(d).

The trial court did not address child support obligations in its divorce decree as is required by § 20–6–302(a). Instead, it dealt with those obligations in its decision letter and incorporated the letter into the divorce decree. In the decision letter, the trial court ordered the parties to share equally in the cost of health insurance, deductibles, medical expenses which were not covered by the insurance, and the expense of transporting the child between the parents' residences. In addition, the trial court ordered the wife to begin paying fifty dollars per month to the husband when the child starts school even though it declared: "It appears to the Court that [the husband] is in a better position in terms of his income and obligations to pay support than [the wife] is." The trial court apparently deviated from the presumptive child support established by § 20–6–304(a) when it ordered the wife to pay the minimal amount of support permitted by WYO. STAT. § 20–6–304(b) (1997).

 The trial court did not order either the husband or the wife to pay child support for the periods when the other parent will have the child more than forty percent of the year. We cannot tell from the divorce decree or the decision letter whether this was

an oversight or whether it was a deviation from the presumptive child support guidelines. A deviation from the guidelines is permitted only when the trial court makes a finding that it would be unjust or inappropriate to follow them in a particular case and it specifically sets forth in full the reasons therefor in the divorce decree. *Sharpe v. Sharpe*, 902 P.2d 210, 214 (Wyo.1995); WYO. STAT. § 20–6–302(b) (1997).

We hold that the trial court erred by not addressing child support obligations in the divorce decree and by not setting forth the specific reasons why it deviated, if it did, from the child support guidelines. We, therefore, reverse the case in part, instructing the trial court to use the record before it to calculate each parent's child support obligation and to include these determinations in the divorce decree. Merely incorporating the decision letter into the divorce decree is not sufficient. *See* W.R.C.P. 54(a). In the event that the trial court deviates from the support guidelines, it shall include its reasons for such deviations in the divorce decree.

**C. Spousal Support**

The wife maintains that the trial court abused its discretion by refusing to award her spousal support. Deciding whether to award spousal support is within the trial court's sound discretion, and we will not disturb that decision unless a clear abuse of discretion appears in the record. *Jones v. Jones*, 903 P.2d 545, 547 (Wyo.1995).

Alimony is addressed in WYO. STAT. § 20–2–114 (1997):

The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

Alimony is not favored in Wyoming, even though it is statutorily authorized. *Jones*, 903 P.2d at 547. Although in some cases alimony may be a necessity, "under ordinary circumstances it should be recognized that one spouse should not have a perpetual claim on the earnings of the other; that divorce,

insofar as possible should sever the ties of the parties and they should begin to start their lives anew." *Grosskopf v. Grosskopf*, 677 P.2d 814, 821 (Wyo.1984). *See also Sellers v. Sellers*, 775 P.2d 1029, 1032 (Wyo. 1989).

In its decision letter, the trial court stated:

The Court has declined to award spousal support, because the Court considers that the parties were virtually equal in their contributions to both the failure of the marriage and the lack of financial success during the course of it. Furthermore, [the wife] has made an election to live with her mother and attend school, and throughout the period after the filing of the divorce decree, when she was substantially supported by [the husband], she elected not to make any notable effort to improve her position, although it is apparent that she could have done so.

The record in this case shows that the trial court considered the financial status of the parties in deciding whether to award spousal support. We hold that the trial court did not abuse its discretion when it declined to award spousal support to the wife.

## CONCLUSION

The trial court did not abuse its discretion by awarding primary custody of the child to the husband or by refusing to grant spousal support to the wife. The trial court did, however, err by not properly addressing child support in the divorce decree.

Affirmed in part, reversed in part, and remanded to the trial court for an appropriate determination of child support in accordance with this opinion.