In re the PATERNITY OF BC, a minor:

KC, Appellant (Petitioner),

v.

JRE, Appellee (Respondent).

No. C-99-2.

Supreme Court of Wyoming.

July 19, 1999.

Representing Appellant: Robert W. Brown and Jonathan A. Botten of Lonabaugh & Riggs, Sheridan, WY, Argument by Mr. Botten.

Representing Appellee: H.W. Rasmussen and Newton S. Ludwig of Attorneys At Law Of Wyoming, P.C., Sheridan, WY, Argument by Mr. Ludwig.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

PER CURIAM.

Pursuant to the request of Appellee JRE (Father), the district court modified the custody of the minor child, BC, ordering an arrangement which changes custody of BC annually from Mother to Father. Finding no evidence which supports this arrangement as being in the best interests of the child, and finding the evidence allows but one conclusion, we reverse and remand with instruction to continue Mother's custody under the terms and conditions existing prior to the district court's recent modification.

## ISSUE

A single issue is presented for review:
Whether the District Court abused its discretion in modifying custody and ordering alternating years of custody of the minor child.

## FACTS

BC was conceived when Mother was sixteen years old and Father was twenty. Shortly after the birth, Father petitioned for a declaration of paternity and visitation privileges. The district court granted Father's request, and in 1995, Father was entitled to visitation every day while Mother completed high school, as well as six hours on every Wednesday and alternating weekends.

In 1997, Father petitioned to modify the custody arrangement. Prior to the date set for hearing, Father petitioned the district court for an expedited hearing, alleging he had just learned that Mother was leaving Wyoming to attend school in Missouri and would be gone before the hearing date set by the court. The hearing date was moved forward, and the matter came before the court on July 28, 1997.

The following facts are taken from the statement of the evidence presented at a second hearing on July 31, 1998, which was unrecorded, pursuant to W.R.A.P. 3.03. Mother offered two witnesses—herself and a licensed psychologist. Mother presented documentary evidence and testimony demonstrating she already had completed her course of studies in Missouri, and became a certified surgical technician on July 23, 1998. Upon graduation, she had secured a full-time job with the hospital at which she had interned.

While attending school, Mother lived with BC in a clean and safe home, providing pictures of the home to the district court. She also provided pictures of an apartment into which she planned to move the following month. Regarding child care, Mother stated BC was enrolled with a licensed day care while she was in school, and the arrangement would continue when she began her new job. In addition, Mother arranged for a day care provider to stay at her apartment while she was on call so that BC's schedule would not be unduly interrupted if she had to leave.

Mother also testified that she has accommodated Father's visitation beyond what was required by court order and has allowed telephone access at all reasonable times. Mother further stated that on two occasions during visitation with Father, the child had fallen and been hurt. Mother presented several photographs of Father's yard in a cluttered condition and his porch lacking a guardrail.

The psychologist, who has extensive experience in therapy and has frequently made custody recommendations to courts, admitted she had not interviewed the child in the past year. However, she testified that she could make general recommendations regarding custody and visitation for a child of three. She stated that in her experience and opinion, it is traumatic for a three-year-old child

to be parted from his primary care giver for more than two weeks at a time. She also testified that behavioral problems can occur with children who are not allowed to have a consistent bond with their primary care giver, while conceding that every case is different, and she could not make generalizations to a specific case.

Father presented only his own testimony. He stated he enjoyed spending time with the child and wanted to exercise his right to be involved in his child's life. He also stated there was no reason to be concerned with a change of households and that he was sure the child would adjust. Father testified that his current employment, obtained four to six months prior to the hearing, requires him to work from midnight to 8 a.m. Father stated that if he had custody, five nights a week he would put the child to bed at the home of his mother at approximately 8 p.m. and then catch some sleep until approximately 11:30 p.m., when he must leave for work. Father assured the court that he could safely supervise the child during the day because he catches up on his sleep while the child is napping. Father rebutted Mother's testimony, stating that her cooperation in visitation has been for her own convenience, and that the photographs of the yard showed either the child's toys or items owned by neighbors.

We will quote verbatim from the Statement of Evidence or Proceedings regarding the conclusion of the July 31, 1998, hearing:

> 34. After the evidence was concluded, the attorneys for the parties made closing arguments. The Court asked [Mother] if she was satisfied with her custody and visitation proposal presented to the Court on the day of the hearing. She said that she was. The Court then announced that its decision was "probably going to make both parties mad." *The Court then stated, "What's good for the goose is good for the gander."* The Court then ordered that the custody and visitation proposal presented to the Court by [Mother] on the day of the hearing would apply for the first year, and that the next year the order would be reversed, with [Father] having custody as set forth in the proposed order and [Mother] having visitation as set forth

in the proposed order. The Court further explained that primary custody and visitation would alternate in each succeeding year."

The Court also denied [Father's] petition for order to show cause and admonished [Father] to fix the porch at his house trailer.

(Emphasis added.) Mother filed this timely appeal.

## STANDARD OF REVIEW

■ Custody, visitation, child support, and alimony are all committed to the sound discretion of the trial court. *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998).

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present "when a material factor deserving significant weight is ignored."

*Id.* (quoting *Triggs v. Triggs,* 920 P.2d 653, 657 (Wyo.1996)) (internal citations omitted).

## DISCUSSION

■ The disposition of this case may be made in a summary fashion, pursuant to our recent holding in *Reavis, supra.* There, we stated that we must rely on the district court's articulation of the factors which were considered and how those factors support its conclusions. *Id.* Here, the only factor expressed by the court was the equalization of gender opportunity for native fowl. This is clearly an unacceptable basis for awarding custody of a child:

> The district court's ruling makes no mention of the ... individual [child] that [is] affected by this order, nor does the

district court attempt in any way to address [the child's] individual needs. . . .

The problems for children who are required to alternate between residences has been recognized by many courts. Implicit in the authorization to award divided custody is that the court do so after becoming reasonably satisfied that for the child the positive aspects outweigh the negative.

. . . .

The district court's order, calculated to avoid a parental "upper hand," appears to stem from the belief that splitting the prize down the middle is the fairest means to resolve an impasse. . . . We . . . firmly reject the indiscriminate resolution of a custodial dispute via mathematical equity.

*Reavis,* 955 P.2d at 434 (citations omitted).

In this case, Father admitted he had no concerns with Mother's care of the child, and gave no reason, other than to satisfy his own rights, why the child should be removed from the concededly supportive environment of Mother's care. During Mother's custody of BC, she has completed schooling, secured a good job, provided a safe home, and has arranged for a steady and professional child care provider while she is at work. In contrast, Father admits that the child would have to spend five out of seven nights in another home, and that during the day, with only a few hours of sleep, he would be caring for the child. Furthermore, the record, as stipulated to by the parties, clearly indicates that the custody ordered by the district court would be a drastic change for BC.

It is clear that the evidence allows only one conclusion:

The [child's] best interests are unquestionably promoted by the continuance of Mother' primary nurturing role, with Father continuing to exercise liberal visitation. The order of the district court is reversed and the matter is remanded with instruction to award primary custody to Mother.

*Reavis,* 955 P.2d at 434.

## CONCLUSION

As we stated in *Reavis* and reiterate here, every case regarding the custody of children requires careful weighing of relevant factors, looking to the unique and individual family relationships in order to reach a resolution in the best interests of the children in that family. *Reavis,* 955 P.2d at 431. We will not tolerate a cavalier attitude toward the children whose futures depend upon judicial pronouncements. The order of the district court is reversed, and we remand the matter for disposition in accordance with this opinion.