2004 WY 40

**Andrea M. PAHL, Appellant (Defendant),**

v.

**Troy Lee PAHL, Appellee (Plaintiff).**

No. 03–72.

Supreme Court of Wyoming.

April 14, 2004.

Representing Appellant: Donald E. Miller of Graves, Miller & Kingston, P.C., Cheyenne, WY.

Representing Appellee: Kathryn J. Edelman of Edelman Law Office, Gillette, WY.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1] Andrea M. Pahl (Mother) appeals the district court's decision to award primary custody of the parties' child to Troy M. Pahl (Father). Mother contends the district court failed to consider that she was the primary caregiver when making its custody determination and thus abused its discretion. Mother further asserts the district court relied exclusively on the fact that she planned to take the child to Germany when it decided to award primary custody to Father. Finding no abuse of discretion, we affirm.

## ISSUE

[¶2] Mother presents the following issue on appeal:

> Did the trial court err as a matter of law when the court denied the "primary care giver" custody based solely on the fact that the "primary care giver" intended to return to her homeland in Germany?

Father rephrases the issue as:

> Was the district court's award of custody to the father a reasonable choice under the circumstances, giving paramount consideration to the welfare and needs of the child and due consideration to the mother's primary caretaker role?

## FACTS

[¶ 3] The parties were married while Father was stationed in Germany as a member of the United States Army.[1] The couple moved from Germany to Fort Polk, Louisiana and then eventually to Wright, Wyoming in February of 1999. Father is a United States citizen, and Mother is a citizen of Germany. In September of 2000, the parties' only child was born. The child has both German and U.S. citizenship.

[¶ 4] Prior to the child's birth both parties worked full time, but after the birth Mother stayed home to care for the child. Later, Mother took a part-time job. At some point in time, Mother became unhappy living in Wright and sought to move. The parties discussed moving to other towns around northeast Wyoming or perhaps Denver, Colorado, but the parties could not reach an agreement on the subject. Eventually, in February of 2002, Mother stated that she wanted to remain married but that she wanted to return to Germany with the child. This arrangement was unacceptable to Father, and he filed for divorce. After Father filed the complaint, the parties continued to live in the marital home with relatively few problems. The parties additionally shared time with the child in a fairly cooperative manner.

[¶ 5] The parties proceeded to a bench trial on November 18, 2002. Each party testified and briefly presented witnesses and other evidence. The evidence mostly pertained to the parties' past interaction with the child and their current ability to care for the child.[2] On December 16, 2002, the district court notified the parties of its ruling by way of a decision letter and asked the Father's attorney to prepare a decree based on that letter. The decree was filed on January 23, 2003, and, in conformance with the decision letter, granted primary custody of the parties' child to Father. Mother appeals.

## STANDARD OF REVIEW

[¶ 6] We have addressed the standard of review in cases such as this numerous times.

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo.1997); *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo*, 907 P.2d 348, 352 (Wyo.1995). It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. *Scherer*, 931 P.2d at 254; *Rowan v. Rowan*, 786 P.2d 886, 890 (Wyo.1990); *see also Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995) and *Fink v. Fink*, 685 P.2d 34, 36 (Wyo.1984). The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink*, 685 P.2d at 36.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo.1995) (*quoting Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo.1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs*, 920 P.2d at 657; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' " *Triggs*, 920 P.2d at 657 (*quoting Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo.1993)).

*Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo. 1998).

---

1. Father testified that the parties were married on August 12, 1998, and Mother testified that they were married on August 16, 1997. In any event, the parties agree that they were married while Father was stationed in Germany.

2. A more specific discussion of this evidence will be set out in the body of the opinion.

[¶ 7] We have additionally explained that "[j]udicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Ekberg v. Sharp*, 2003 WY 123, ¶ 9, 76 P.3d 1250, ¶ 9 (Wyo.2003) (quoting *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998)); see also *Stonham v. Widiastuti*, 2003 WY 157 ¶ 11, 79 P.3d 1188, ¶ 11 (Wyo.2003).

## DISCUSSION

[¶ 8] Mother claims that the district court abused its discretion by failing to consider that she was the child's primary caregiver, a material factor deserving significant weight. Mother asserts that instead the district court inappropriately based its decision entirely on her intent to return to Germany. Father, on the other hand, contends that in addition to considering the mandatory factors, the court did consider that Mother was the primary caregiver for the child. Father asserts that other factors weighed in his favor and thus the district court did not abuse its discretion. We agree with Father.

[¶ 9] We begin by once again noting that the district court's responsibility for fashioning family relationships through custody determinations encompasses one of the most difficult and demanding tasks assigned to a trial judge. *Reavis*, 955 P.2d at 431. "This life-altering decision is perhaps most exacting in cases such as this, where it is apparent that both parents love their children and are fit and competent to have custody." *Id.* Beyond the emotional and family turmoil that attends custody disputes, adding to the district court's difficulty is that every case involving custody issues presents a different situation and set of facts. Consequently, there are no bright line rules to easily apply when making a custody decision. Instead, every case requires a careful weighing of the relevant factors. *Id.* The district court must look to the unique family relationships of each case in order to reach a resolution that is in the best interests of the children in that particular family. *Id.; see also Martin v. Martin*, 798 P.2d 321, 322 (Wyo.

1990); *Pace v. Pace*, 2001 WY 43 ¶ 11, 22 P.3d 861, 865 (Wyo.2001); *Stonham,* ¶ 13. The law, recognizing the different intricacies and circumstances of each case, affords the district court wide discretion when fashioning custody and visitation provisions. *Reavis,* 955 P.2d at 431.

[¶ 10] When exercising its wide discretion in this area, the ultimate goal for the district court is a reasonable balance of the rights and affections of each parent, with paramount consideration being given to the welfare and needs of the children. *Stonham,* ¶ 13 (quoting *Pace,* 22 P.3d at 865). In making its custody determination the district court is charged with the following:

(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14–2–101 through 14–2–120, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other par-

ent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each ·parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20–2–201 (LexisNexis 2001). Guided by these mandatory statutory factors and any other that the court deems relevant, the district court must fashion a custody award. Depending on the case, different factors will present a greater need for emphasis. Additionally "a process of this kind could readily swing the balance toward one party despite there being a material factor in favor of the other party." *Produit v. Produit,* 2001 WY 123 ¶ 22, 35 P.3d 1240, ¶ 22 (Wyo.2001). The one constant however is that the resolution must be in the best interests of the children in that particular family. *Stonham,* ¶ 14. We therefore must determine whether in this case the district court weighed the relevant factors to determine what was in the best interests of this child.

[¶ 11] When determining whether the district court weighed all the relevant factors, we must rely on the district court's articulation of the factors it considered and how those factors support its conclusions. *Reavis,* 955 P.2d at 431–32. Because the district court is relying on its discretionary power, the district court should place on the record the circumstances and factors that were crucial to its determination, as well as its reasoning. That way, counsel and the reviewing court will know and be in a position to evaluate the soundness of the district court's decision. *Fergusson v. Fergusson,* 2002 WY 66, ¶ 15, 45 P.3d 641, ¶ 15 (Wyo. 2002). We have repeatedly implored trial courts to place such information on the record so that we may conduct a meaningful review. We continue to strongly encourage and desire such findings. Certainly such findings would have been enormously helpful in our review of this case because the decision letter provided a somewhat sparse explanation of the district court's reasoning.

[¶ 12] Nevertheless, unless requested, district courts are not required to make specific findings for each statutory factor if "consideration is reflected in the proceeding transcripts, by opinion letter, or as findings in the written order." *Id.* at ¶ 16 (quoting *Produit,* ¶ 12). Therefore, "consistent with *Produit,* we may look to the trial transcripts to determine whether the court's considerations are adequately set forth and comply with § 20–2–201(a)." *Fergusson,* ¶ 17. Several indications in the transcript, combined with the district court's statements in its decision letter, convince us that the necessary factors were considered and appropriately weighed.

[¶ 13] Mother asserts that the district court failed to consider that she was the primary caregiver. In its decision letter, the district court stated: "Because of the father's employment, the mother became the primary caretaker of the child. However, this case shows evidence of two good parents and primary custody with either parent is likely to create no issues of abuse or neglect.... Both parties love and care for the child." As can be seen, the district court was well aware of Mother's status as the primary caregiver. However, Wyoming statute requires that the district court consider other factors in determining the best interest of the child.

[¶ 14] In *Raymond v. Raymond,* 956 P.2d 329, 332 (Wyo.1998), we acknowledged that the other factors can, in some circumstances, outweigh placing custody with the primary caregiver. "Although the trial court considered the wife's role as a primary caregiver in determining what was in the best interests of the child, the other factors which were considered by the trial court ultimately weighed in the husband's favor; i.e., the husband's willingness to get help through counseling to improve his parenting abilities, the emotional stability he could offer the child, and the likelihood that he would promote an ongoing relationship between the child and the wife." *Id.* Thus, while primary caregiver status is a weighty consideration, it is not in all cases ultimately determinative. Rather, the primary caregiver is another factor among the many that the district court

considers. Other factors may outweigh the primary caregiver status.

[¶ 15] Mother asserts that geographic distance was the only other factor considered by the district court. The record and the district court's decision letter do reflect that geographic distance was of eminent concern, but the transcript shows that other factors were also present. It generally appears that Wyo. Stat. Ann. § 20–2–201(a)(i), (ii), (iii) and (vi) weighed in neither party's favor. Each parent had a good relationship with the child, and there was testimony that each parent could provide care to the child including arranging care for the child through others. § 20–2–201(a)(i) and (ii). It also appears that each parent was equally competent and fit to have custody of the child. § 20–2–201(a)(iii). It also seems that each parent interacted and communicated with the child equally well. § 20–2–201(a)(vi).

[¶ 16] The transcript indicates that § 20–2–201(a)(iv) presented some element of consideration. This subsection requires that the court consider each parent's willingness to accept all responsibilities of parenting including a willingness to relinquish care of the child to the other parent at specified times. The evidence showed that Mother reduced the amount of time that the child was available to the Pahl family after Father filed the divorce action. Also related through testimony was an incident where Father sought to take the child on a five-day camping trip with his family. Mother would only consent to a three-day trip for the child. When the child was not returned as Mother required, Mother drove to the Pahl family campsite and took the child from the family's camper refusing to wait until Father could return to the campsite before leaving.

[¶ 17] Sometime later Mother consented to a longer trip, but Mother stated that she only consented to a later longer trip because if she did not Father "probably would have insisted on his rights again." Mother further admitted that it was a source of irritation to her that Father insisted on his visitation rights. Mother also seemed to struggle with the idea of Father having lengthy visitation time. Moreover, Mother felt that the child, only two years old, could understand and decide when and where he wanted to go when faced with a choice, and she therefore declined to arrange a specific visitation schedule pending the district court's decision. These incidents combined to cause Father concern that Mother would not safeguard his relationship with the child. On the other hand, Father appeared to respect the time Mother spent with the child. Father also proposed that if he were given custody Mother could have visitation on any days that he worked in addition to her other visitation time. Based on this testimony the district court could reasonably conclude that Father would be more likely and willing to relinquish care of the child at specified times and could reasonably weigh this factor in Father's favor.

[¶ 18] It is also clear that the court considered how each parent could best maintain and strengthen a relationship with the child. § 20–2–201(a)(v). In its decision letter the court stated:

> With the parties having moved to the United States and having conceived a child here, it seems to the court that the likelihood of each party having a bonded relationship with this child will be best served by awarding primary custody to the father. For another thing, the mother is able to speak both German and English and father is unable to speak German. This gives the mother the advantage in ease of exercising visitation as she speaks perfect English and can maneuver between Germany and the United States with ease while father would be handicapped in Germany. Another item is the ability of the mother to obtain employment in the United States and the near impossibility of the father to obtain employment in Germany. Also, the father testified that the mother informed him that if he were to obtain primary custody, she would remain in the United States, but in another city, possibly Casper, in order to exercise visitation and to continue with the mother-child bond.

Mother proposed that if she were given custody the child would be returned to the United States for two in-person visits per year with Father. Considering how much Father currently saw the child this was hardly rou-

tine visitation. The district court could therefore reasonably conclude that each parent could best maintain and strengthen a relationship with the child if the child were in Father's primary custody.

[¶ 19] Based on the transcript we can also see that the district court considered the ability and willingness of each parent to allow the other to provide care without intrusion and respect the other parent's rights and responsibilities. § 20–2–201(a)(vii). While there was not a great deal of evidence on this point, the evidence that was presented showed that Mother demonstrated some inability to permit Father to provide care without her intrusion. For example, testimony showed that Father knew and followed the child's bedtime routine. Yet, when Father put the child to bed, Mother felt the need to get the child back up to again brush his teeth and wash his hands. Mother insisted that the child be home by 7:00 when he was with Father and would call at that time or go pick up the child. However, the 7:00 curfew did not always apply when the child was with Mother. Testimony also showed that when the child was on the aforementioned longer Pahl family trip, Mother insisted on calling the child twice a day. The district court is in the best position to evaluate the witnesses and their demeanor when testifying; and we thus conclude that, based on the above evidence, the district court could reasonably find that this factor also weighed in Father's favor.

[¶ 20] Finally, it is clear that geographic distance was at the heart of the district court's decision. In its decision letter the district court stated: "Since the court must decide this based upon the best interest of the child, I will find that the decision of the mother to return to Germany and to permanently place so much distance between the child and the father, is not in the best interest of the child." There is no doubt that there is a great distance between Germany and Wright. The round-trip airfare would be costly; the round trip lengthy. These considerations are important because reasonable visitation for the noncustodial parent must be available. *Watt v. Watt,* 971 P.2d 608, 614 (Wyo.1999); *Love v. Love,* 851 P.2d 1283, 1288–89 (Wyo.1993). Additionally, the chances of both parents having a meaningful relationship with the child may rest on how often that parent can exercise visitation.

[¶ 21] The recent *Stonham* case addressed similar international custody issues. In *Stonham,* the mother, an Indonesian woman, was awarded sole custody of the couple's two children despite the fact that she intended to return to Indonesia following the divorce. On appeal we held that the district court did not abuse its discretion when making this custody award. *Stonham,* ¶ 32. In doing so, we in part reasoned that each case requires the trial court to carefully weigh the relevant factors while looking to the uniqueness of each situation. ¶ 14. The particular facts of *Stonham* showed that the mother was the primary caregiver for the children and planned to return to Indonesia following the divorce. Additionally weighing in the mother's favor as primary custodian was evidence that the mother was emotionally better equipped to care for the children and she had the support of a stable, supportive, and loving family in Indonesia. Weighing against the father was the fact that he was unable to maintain stable and long-term relationships, and he had little or no respect for mother. ¶ 17. The evidence also indicated that the father had stormy relationships with his own family, and he presented a moderate risk of verbal and emotional abuse to the child. ¶¶ 18,19.

[¶ 22] While the international element of *Stonham* is similar to the case now before us, the other facts and circumstances are not. *Stonham* did show that we are willing to uphold a custody award where the primary custodian intends an international move, but the basic message from that case is similar to the message from all our cases involving custody issues: the district court must weigh *all* the relevant factors and make a custody determination in the best interests of that individual child. Cases involving child custody when one party seeks to move abroad are, like all custody cases, fact sensitive. Therefore, it would be foolish to attempt to define a bright line test for their determination. Instead, we must decide whether the district court weighed all the relevant factors in each particular case.

[¶ 23] In the course of *Stonham* we also acknowledged that the international element of that case complicated the matter. We then noted that we have not had a prior occasion to address such a case as that but noted that others had. *Stonham*, n.8 (citing Caroll J. Miller, Annotation, *Court–Authorized Permanent or Temporary Removal of Child by Parent to Foreign Country*, 30 A.L.R.4th 548 (1984 & 2002 Supp.) and M. David LeBrun, Annotation, *Propriety of Awarding Custody of Child to Parent Residing or Intending to Reside in Foreign Country*, 20 A.L.R.4th 677 (1983 & 2002 Supp)). Those compiled cases "illustrate the competing benefits and limitations in awarding or denying custody to a foreign parent." *Stonham*, n.8. Many of those cases present a compelling argument for awarding primary custody to the parent who will be remaining in the United States. However, others show how a court can reasonably award custody to the moving parent. "Despite the factual differences in these cases, there is one common analytical thread in virtually every case: the best interest of the child is paramount in any award of custody and visitation, and the trial court has a large measure of discretion in making that award." *Id.*

[¶ 24] In *Resor v. Resor*, 987 P.2d 146 (Wyo.1999) we also addressed the issue of a primary custodian who intended to move following the divorce. We held that the district court did not abuse its discretion in allowing the mother custody even though she intended to move to Seattle, Washington. We said that our decisions precluded the court from keeping the mother from giving up her plans to relocate with the children. *Id.* at 150. We further stated: "It is unrealistic to assume that divorced parents will remain in the same location after dissolution of the marriage or to exert pressure on them to do so." *Id.* at 151. However, the differences between Germany and Seattle are significant. Importantly, the court is required to take geographic distance into consideration when making its initial custody determination. "Geographical relocation does not make a parent who has cared for the children less capable of maintaining parental responsibilities and obligations." *Id.* at 152. Nevertheless, it does bear on the ability of both parents to enjoy a meaningful relationship with their child. In this instance, the child's move to Germany would significantly impact Father's right of visitation. Although Mother proposed two in-person visits per year, the proposal was that she pay for the child to return to the United States for the summer for visitation with Father. However, Father would have to pay for the child's return to Germany and any other visitation Father desired in Germany. Mother admitted that Father did not have a lot of additional income to take other trips to Germany. The district court could accordingly conclude that even if liberal visitation were awarded, given Father's inability to speak German and unlikelihood of finding a job in Germany, Father may not have been able to exercise regular visitation.

[¶ 25] Consequently, this factor weighed heavily in Father's favor, especially considering that Mother stated that she would not move to Germany if Father were granted primary custody. We thus cannot conclude that the district court abused its discretion. The district court weighed the relevant evidence and determined that primary custody with Father was in the child's best interests. Although Mother was in fact the primary caregiver, the trial court was well within its discretion to decide that, on the whole, Mother's difficulty in relinquishing care to Father, trouble allowing Father to have time with the child without interference, and her planned move to Germany, combined with Father's stable work schedule, abilities, and willingness to share the child with Mother ultimately weighed in Father's favor.

### CONCLUSION

[¶ 26] For the reasons noted above holding that the district court did not abuse its discretion, we affirm the district court's decision to award primary custody to Father in this case.