[No. 17252-6-II.   Division Two.   July 28, 1995.]

*In the Matter of the Marriage of* NORIS I. MAPLES, *Respondent*, v. JAMES K. MAPLES, *Appellant.*

698

*Clifford Randolph Kuhn*, for appellant.
*Noris I. Maples*, pro se.

WIGGINS, J. — James K. Maples appeals a Cowlitz County Superior Court order that modified his previous child support obligation. Maples receives workers' compensation disability income and social security disability income and his children also receive direct payments from these two sources. We must decide whether the direct payments to the children should be considered part of James's income for purposes of computing child support under the statutory support table, or whether the direct payments should be considered income to the children which may justify a deviation from the support set forth in the table. The Superior Court adopted the latter interpretation, and ordered James to pay higher support than the amount in the table. Reading the statutory scheme as a whole in light of the legislative history, we hold that the payments should be considered part of James's income. Our holding results in higher child support than the deviation ordered by the Superior Court and the support order is reversed.

## FACTS

James Maples and his wife Noris were divorced sometime before 1991. Noris has primary custody of their two children, Joshua (born in 1979) and Sabrina (born in 1980). The dissolution decree apparently required James to pay child support for each child in the amount of $269.28 per

month, for a total of $538.56. He paid that amount until 1991.

James worked for the City of Longview until failing eyesight disabled him, when he went on disability leave. James began receiving disability payments from two sources: (1) social security in the amount of $939 per month; and (2) the Gates-McDonald Company, the City's workers' compensation disability insurer, in the amount of $740.32. Besides paying those benefits to him, both social security and Gates-McDonald began paying his children directly on account of his disability, in the amounts of $482 and $85.44 per month respectively.

In March 1993, James moved for relief from his child support payments. James argued that because the social security payments are "not counted as income for the purpose of calculating child support", his sole income for calculating support was the workers' compensation payment of $740.32. James calculated his combined support obligation for both children at $315 per month. In light of his children's receipt of disability payments totaling $567.44, James asked the Superior Court to give further credit for those payments and to relieve him completely of his support obligation.

Noris Maples appeared pro se below (she has not filed a brief in this appeal) and asked the court to deny James's motion. Noris argued that James's combined disability income, from social security as well as Gates-McDonald, was $1,679.32, and that her own income had declined from the time of the original decree.

In resolving James's petition, the Superior Court counted both of James's disability payments as income, for a total of $1,679.32; gave him credit for the direct disability payments to the children, pursuant to RCW 26.18.190; accepted Noris's net income statement of $671.05 per month; and, based on these figures, calculated James's standard support obligation at $128 per month. The court deviated from the standard support obligation, ordering James to pay $175 per month for both children.

The trial court entered the following finding in support of the deviation:

> The Court considers the amount of money paid directly to the children, related to father's disability, income of father and a higher support amount is therefore justified.

## ANALYSIS

■ James first argues that the trial court erred by converting his petition for credit into a proceeding to modify the child support provisions of the parties' decree. He contends that the parties' entire finances were not properly before the court, as they would be in a true modification proceeding brought under RCW 26.09.175. We disagree. James invited the court's consideration of the parties' finances. His motion for credit not only detailed his own "current total income" of $1,679.32, but it compared that figure with his ex-wife's 1991 gross income of $934 and incorporated standard worksheets setting forth the parties' respective support obligations based on those income figures. James invited the court to consider the parties' overall finances and cannot complain that the court accepted his invitation. *See Bellevue v. Kravik*, 69 Wn. App. 735, 850 P.2d 559 (1993); *Shanlian v. Faulk*, 68 Wn. App. 320, 843 P.2d 535 (1992).

■ James argues that the disability payments to his children cannot be considered as his income, and should not be factored into the calculation of child support. Since 1988, child support in Washington has been computed under the child support schedule incorporated into a statutory scheme. The court must adhere to the following procedure in setting support: compute the total income of the parents, RCW 26.19.071; determine the standard child support level from the economic table, RCW 26.19.020; decide whether to deviate from the standard calculation based on specific statutory factors, RCW 26.19.075; and allocate the support obligation to each parent based on each parent's share of the combined net income. RCW 26.19.080 The court may deviate from the standard calculation by

setting forth specific reasons for deviation in written findings of fact, which must be supported by the evidence. *In re Marriage of Sacco*, 114 Wn.2d 1, 4, 784 P.2d 1266 (1990). In this case, the court entered the required findings of fact.

■ The disability payments to James are clearly income to James, because RCW 26.19.071(3) defines "income" in this context as "income from any source, including: (a) Salaries; (b) Wages; . . . (s) Social security benefits; and (t) Disability insurance benefits". This case requires us to determine the proper treatment of the direct payments to James's children. The Social Security Administration makes payments directly to the minor, dependent child of a person entitled to disability insurance benefits. 42 U.S.C. § 402(d)(1). *See Clayborne v. Califano*, 603 F.2d 372 (2d Cir. 1979). State workers' compensation benefits are paid similarly to the dependent children of a disabled worker.[1] RCW 51.32. The disability payments to the children can be interpreted either to be income to James, or else income to the children themselves. If income to the children themselves, then the payments are not counted in computing James's standard child support, but they would be "extraordinary income" of a child which could be a basis for the trial court to deviate from the standard child support obligation.

■ ■ We interpret the statute consistent with the legislative intent:

> The goal of statutory construction is, of course, to give effect to the intent of the Legislature. Where the meaning of the statute is clear from the language of the statute alone, there is no room for judicial interpretation. If the language of the statute is amenable to more than one construction, however, resort to legislative history and other aids to construction is appropriate.

(Footnotes omitted.) *Kadoranian v. Bellingham Police*

---

[1]The record does not verify the precise nature of the Gates-McDonald payments to the children arising out of James's disability leave from employment with the City of Longview, but James's brief indicates that they are worker's compensation disability benefits.

*Dep't*, 119 Wn.2d 178, 185, 829 P.2d 1061 (1992). Where the Governor has vetoed part of a statute, the Governor has acted as part of the Legislature and we consider gubernatorial intent as well. *State ex rel. Royal v. Yakima County Comm'rs*, 123 Wn.2d 451, 462-63, 869 P.2d 56 (1994).

We conclude that the child support statutes are unclear whether the disability payments to the children are income to James or income to the children, and we look therefore to the legislative history. The 1988 legislation enacting the child support schedule did not specify the resources to be included in income. The 1988 act simply directed that, "[a]ll income and resources of each parent's household shall be disclosed and shall be considered by the court or administrative law judge when the child support obligation of each parent is determined". Laws of 1988, ch. 275, § 3(3). The 1988 act also provided that the trial court could deviate from the support calculated under the schedule, specifying several reasons for deviation, including "extraordinarily high income of a child". Laws of 1988, ch. 275, § 3(6). The ground for deviation survives in the current RCW 26.19.075(1)(a)(vii) as "[e]xtraordinary income of a child".

In 1990, the Legislature enacted RCW 26.18.190, dealing with workers' compensation disability payments and social security disability payments which are made directly to the child. Section 190 provides that such disability payments "shall be treated for all purposes as if the disabled person paid the compensation toward satisfaction of the disabled person's child support obligation". RCW 26.180.190. This section applies to the payments to James's children.

In 1990 and 1991, the Legislature passed several amendments to the child support schedule. These bills more specifically defined "income". 1990 H.B. 2888,§ 8; 1991 E.S.S.B. 5120, § 29. Governor Gardner vetoed both the 1990 and 1991 definitions of income because they were too restrictive. Gov. Gardner stated in his 1990 veto message:

[The definition of "income"] removes a wide array of items from the calculation of gross income, and shifts the burden of proof for deviations to custodial parents even in situations where the income is actually much higher than "gross income" as defined in this section. This section could substantially lower support for children, when no data exists to justify this change.

Veto Message, H.B. 2888, *House Journal*, 51st Leg., 1st Sp. Sess., at 1789 (Mar. 26, 1990). Governor Gardner again stated in his 1991 veto message:

The majority of support awards in the state could be lowered because of this change. I see no reason to use a definition that arbitrarily excludes as a benefit for children these very real types of resources that are available to parents.

Partial Veto Message, Second Substitute S.B. 5120, *Senate Journal*, 1st Sp. Sess., p. 4312, 4313 (May 21, 1991).

The Legislature acceded to the gubernatorial vetoes and considered a new definition of income which was more inclusive and less restrictive. S.B. 5996, *Senate Journal*, 1st Sp. Sess., p. 3922 (June 26, 1991). During hearings, the bill was criticized for its failure to include social security and disability benefits in the definition of income. *Senate Bill Report*, S.B. 5996 (June 19, 1991) (Senate Law and Justice Bill Files, 1990 S.B. 5996). One week later, two senators proposed Substitute Senate Bill 5996, which included in the definition of income, among other things, workers' compensation, social security benefits, and disability insurance benefits. S.B. 5996, *Senate Journal*, 1st Sp. Sess., p. 3926 (June 26, 1991). The Legislature adopted this definition, the Governor signed it into law, and it was codified as RCW 26.19.071.

■■ We conclude from this legislative history that the disability payments to the children should be considered part of James's income for purposes of setting his support obligation. The clear legislative intent in establishing the child support schedule was to set an adequate level of support "commensurate with the parents' income, resources, and standard of living". RCW 26.19.001. The Governor's

repeated vetoes evidence a clear intent to consider all available resources, as does the specific inclusion of workers' compensation, disability payments, and social security benefits in the definition of "income". RCW 26.19.071(3). RCW 26.18.190 provides that such payments "*shall be treated for all purposes*" as if James, the injured worker, paid the compensation towards his child support obligation. (Emphasis added). The payments cannot be considered as having been made by James unless they are also treated as income to James. In other words, James has two sources available to him to pay child support—James's disability payments of $1,680 and the disability payments to the children in the amount of $567, for a total of $2,247. Since both resources are available to satisfy his child support obligation, both resources should be considered as income to him for purposes of calculating his child support obligation. Otherwise, the direct disability payments to the children would result in a windfall to the disabled parent, whose obligation would be unfairly reduced at the expense of the custodial parent.

Our interpretation follows and promotes the legislative goals expressed in the statute: provide for adequate support based on economic data; increase the equity of support orders by providing for comparable orders in comparable cases; and, increase voluntary settlements through greater predictability. RCW 26.19.001. Our interpretation furthers the first goal by automatically including the disability payments in the disabled parent's income to determine the standard calculation. It furthers the second goal of providing comparable orders—all children of disabled parents who receive direct disability payments will be similarly treated. Finally, our interpretation furthers the third goal—parties will always know that the disability payments must be factored into the disabled parent's income, instead of wondering whether and by how much a particular judge will follow the standard calculation or order a deviation.

■ Common sense also dictates that all disability pay-

ments be considered income of the disabled parent. Disability payments substitute for earned income. Were the parent not disabled, the parent would continue to earn income which would be counted as parental income. The substitutionary disability payments should similarly be counted as parental income. The payments are made directly to the children, or custodial spouse, to protect the children and insure that the payments are used for the children's benefit. But paying the child directly does not transform this substitute for the parent's earnings into income for the child. An example, using the figures in this case, illustrates the impact of our analysis.[2]

|  | Not counting children's disability payments as income to James | Counting children's disability payments as income to James |
| --- | --- | --- |
| James's income | $1,680 | 2,247 |
| Noris's income | 670 | 670 |
| Combined total | 2,350 | 2,917 |
| Standard joint support obligation (2 children) | 972 | 1066 |
| James's percent and share of total obligation | 71.5 percent/$695 | 77.1 percent/$822 |
| James's obligation after subtracting children's disability payments | 695 − 567 = $128 | 822 − 567 = $255 |
| Noris's percent and share of total obligation | 28.5 percent/$277 | 22.9 percent/$244 |

As can be seen from this illustration, failing to count the children's disability payments as income to James reduces his standard support obligation by $127 ($255 - $128) and increases his ex-wife's support obligation by $33 ($277 - $244). This flies in the face of the clear intent of RCW 26.18.190, which is to treat the disability payments to the children as if they were paid to the injured worker, and then by him or her to the custodial parent.

■ The trial court erred in failing to include the pay-

---

[2]In this illustration, some figures are rounded off.

ments to the children in James's income for purposes of calculating the standard child support obligation. The court should have found James's standard obligation to be $255 per month after crediting the children's disability payments.

The trial court decided to treat the disability payments to the children as a ground for deviating from the standard obligation, based on the court's finding that the disability payments should be considered "income of father . . .". Accordingly, the court increased James's obligation to $175 per month. This would have been proper if the disability payments were considered to be the children's income instead of James's income. The trial court has discretion to deviate from the standard obligation based on the child's "extraordinary income". RCW 26.19.075(1)(a)(vii). Thus, the court has held that a child's social security disability benefits could be treated as extraordinary income permitting the court to deviate by reducing the father's standard support obligation. *In re Marriage of Trichak*, 72 Wn. App. 21, 25, 863 P.2d 585 (1993).

*Trichak* differs from this case—there, the social security disability payments to the child derived from her own disability rather than a parent's, and RCW 26.18.090 was not at issue. Thus, the child's disability payments were not treated "for all purposes as if the disabled person paid the compensation toward satisfaction of the disabled person's child support obligation". RCW 26.18.190. Here, by contrast, once the father's standard obligation is calculated to reflect the children's disability payments, the effect of the trial court's order was to cut the father's obligation from $263 to $175. We hold that the trial court erred in treating the disability payments as income to the children instead of income to the father.

Noris appeared pro se at the trial court, stating, "I respectfully put myself and my children at the mercy of this courts [*sic*] decision regarding the support of my children". She did not cross-appeal the order of child

support. This court will grant affirmative relief to a respondent only if the respondent cross-appeals, or if "demanded by the necessities of the case". RAP 2.4(a). However, all of our rules are to be "liberally interpreted to promote justice and facilitate the decision of cases on the merits". RAP 1.2(a). The courts have long had a special responsibility to protect the interests of children whose rights are brought before the courts. *Chandler v. Chandler*, 56 Wn.2d 399, 403-05, 353 P.2d 417 (1960). Having determined that the trial court fixed the child support significantly below the standard calculation, we hold that the necessities of the case require recomputation of child support. However, in view of Noris's failure to appeal, and James's justifiable expectation that his support obligation would not be increased retroactively, we hold that any recomputation of support will be prospective only.

We reverse and remand to allow the trial court to redetermine the appropriate level of child support.

SEINFELD, C.J., and HOUGHTON, J., concur.