**Rodger W. WOOD, Appellant (Defendant),**

v.

**Loretta A. WOOD, Appellee (Plaintiff).**

No. 97–354.

Supreme Court of Wyoming.

Sept. 29, 1998.

Keith R. Nachbar, Casper, for appellant (defendant),

Peggy Taylor Pfau of Attorney's Office of Peggy Taylor Pfau, P.C., Gillette, for appellee (plaintiff).

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Rodger Wood (the father) appeals from the denial of his motion to modify his child support obligation.

We reverse and remand.

### ISSUES

The father requests our review of several issues:

A. Was the court's calculation and finding of income of the Defendant an abuse of discretion or an error of law where the court:

---

* Chief Justice at time of oral argument.

1. imputed income to the Defendant where there was no evidence to support the [c]ourt's finding?

2. added interest income from a retirement account as part of the Defendant's income, when the account had already been considered and divided in the divorce decree and only 55% of the interest income is the Defendant's?

3. used the highest three weeks of income for the Defendant in a seven month period, although that income level was reflective of neither the Defendant's income at the time before the hearing nor the Defendant's average income?

B. Was the court's calculation and finding of the Plaintiff's income an abuse of discretion or an error of law where the court:

1. used $1,824.00 per month as Plaintiff's income, when she admitted in testimony that her net income was approximately $3,485.61?

2. excluded from Plaintiff's income $1,536.00 in social security benefits she receives each month, even though Plaintiff testified that she uses that money to pay her everyday household expenses?

C. Was the court's deviation from the presumptive support guidelines an abuse of discretion or an error of law where the court:

1. made no specific finding that application of the presumptive guidelines would be unjust or inappropriate, as required by Wyo. Stat. § 20–6–302(b)?

2. found that the Defendant was voluntarily underemployed even though the uncontroverted testimony was that he was earning as much money as he could under the circumstances?

3. found that the Defendant would be released from Community Alternatives of Casper "imminently" and therefore would be earning additional income, although there was no evidence to support such a finding?

D. Was it an abuse of discretion or error of law for the court to order that all of Defendant's retirement assets, both exempt and nonexempt, be paid to Plaintiff for child support, and for the court to attempt to put a lien on those assets, when both the Defendant and the Plaintiff earn monthly incomes sufficient to very comfortably support the minor children?

## FACTS

The father married Appellee Loretta Wood (the mother) on July 24, 1991. The mother had two daughters from a previous marriage, and the father adopted these girls shortly after he married their mother. The couple had two more children during their marriage.

In February of 1995, the father was sentenced to serve a term of not less than two years nor more than eight years in the Wyoming State Penitentiary for taking indecent liberties with a minor. He spent approximately four months, from March of 1995 until July 19, 1995, at the Wyoming State Penitentiary before being transferred to the Honor Conservation Camp in Newcastle. In October of 1996, he was transferred to Community Alternatives of Casper.

The parties were granted a divorce on September 15, 1995. The divorce decree required the father to pay $930 per month in child support. At that time, the father had money in a credit union account, and his support payments were drawn from that account. After the funds in the credit union account were depleted, the father moved to have the amount of his child support reduced. After holding an evidentiary hearing on the matter, the district court denied the father's motion. The father appeals from that denial.

## STANDARD OF REVIEW

The party who sought to have a child support order modified had the burden of showing that a substantial or material change in circumstances occurred after the initial decree was entered. *Murphy v. Holman*, 945 P.2d 1193, 1194 (Wyo.1997). We review the district court's determination regarding the request for a child support modification to ascertain whether or not the court abused its discretion. *Cranston v. Cranston*, 879 P.2d 345, 348 (Wyo.1994). In reaching a conclusion, we must decide the ultimate issue

of whether or not the district court could have reasonably concluded as it did. *Raymond v. Raymond*, 956 P.2d 329, 331 (Wyo. 1998). If the district court acted in a manner that exceeded the bounds of reason under the circumstances, the court abused its discretion. *Duffy v. State*, 730 P.2d 754, 757 (Wyo.1986).

## DISCUSSION

In deciding whether or not to modify the father's child support, the district court performed two separate calculations. In the first calculation, the district court found that the father's monthly net earnings from his employment were $1,760 and that the monthly growth income on his retirement account was $300. It then imputed in-kind income of $250 per month for living at Community Alternatives of Casper "essentially at State expense." It added these amounts together and determined that the father's monthly net income was $2,310. The district court found that the mother's average monthly income from her employment was $1,949. It subtracted $125 per month from that amount, because this portion of the mother's income was sporadic income, and determined that the mother's monthly net income was $1,824. Using the child support guidelines and these monthly net income figures, the district court ascertained that the father's presumptive support obligation would be $780.09 and that this amount would not be a reduction of at least twenty percent from the original support obligation as is required for a child support modification. WYO. STAT. § 20–6–306(a) (1997).

In its second calculation, the district court added $1,500 to the mother's monthly income to reflect the social security benefits that the two oldest children received because their biological father had passed away. Adding this amount to the mother's net income would result in the father presumptively owing $701.04 under the child support guidelines, and this amount would be a reduction of more than twenty percent from the original support obligation. The district court decided, however, that, if it included the social security benefits in the mother's net income, it should deviate from the presump-tive child support because the father was voluntarily underemployed, his release from Community Alternatives of Casper was imminent, the children had increased medical expenses as a result of the father's abuse, and the father had adequate assets from which the previously ordered child support could be paid. The district court, accordingly, ordered that, in any event, the child support would remain at $930 per month.

The father asserts on appeal that the district court abused its discretion in calculating the parties' net incomes, by deviating from the presumptive child support, and by ordering that his retirement assets be used to make the child support payments and to be security for the support obligation.

### A. Net Incomes

We begin with a review of the district court's calculations of the net incomes for the parties. Contained within this broad issue are the following subissues: whether or not (1) the district court properly imputed in-kind income to the father; (2) only fifty-five percent of the growth income on the retirement account should be attributed to the father; (3) the district court properly used the highest income figure out of the seven-month history that was provided for the father; (4) the social security benefits, which the mother received for the benefit of her two oldest daughters, should be included in her net income; and (5) sporadic income should be excluded to reduce the mother's net income.

#### 1. *In-kind Income*

The district court declared that, although the father was paying only $300 per month to live at Community Alternatives of Casper, the fair market value of room and board at Community Alternatives of Casper was $550 per month. The district court concluded, therefore, that the father was receiving in-kind income of $250 per month. We do not agree that this amount should be included in the father's net income calculation because the record does not support its inclusion and because the district court improperly speculated in arriving at this amount.

The mother contends that the district court could have taken judicial notice of this amount by using the Community Alternatives of Casper contract, which she had submitted as an offer of proof but which had been rejected as an exhibit. The mother maintains that the contract established that Community Alternatives of Casper incurred more expense in housing the father than the amount he was paying for room and board.

 The offer of proof was merely that and did not qualify as evidence. We further reject the mother's contention that the district court could have taken judicial notice by using the Community Alternatives of Casper contract because the information in the contract was not "generally known within the territorial jurisdiction of the [district] court" nor was it "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." W.R.E. 201(b). *See also Nuspl v. Nuspl,* 717 P.2d 341, 343 (Wyo.1986). The $250 that the district court imputed to the father cannot, therefore, be included as part of his net income.

### 2. *Retirement Account Growth Income*

 The district court also included an amount in the father's net income calculation that represented the entire growth income on his retirement account. Because the district court divided this retirement account subsequent to the divorce so that the father retained fifty-five percent of the account and the mother received forty-five percent, it could not include the entire growth income as part of the father's net income. Only fifty-five percent of the growth income could be attributed to the father; the remaining forty-five percent of the growth income must be included in the mother's net income calculation.

### 3. *Father's Monthly Earnings From Employment*

 In determining the father's monthly earnings, the district court used the father's current earnings of $520 per week instead of using the summarization of the father's earnings from the first of the year to find his average monthly earnings. The fa-

ther worked in construction, and his monthly income, therefore, fluctuated. We agree that, given the nature of the father's employment, his earnings must be determined by averaging his income over several months. *See Triggs v. Triggs,* 920 P.2d 653, 659 (Wyo. 1996). We do not agree, however, that the amounts from the early part of the year, when the father was not permanently employed, can be included. If these amounts were included, the figure would be artificially low. The father's monthly net earnings should, therefore, be calculated by averaging his monthly paychecks from the time in March of 1997 when he became regularly employed.

### 4. *Mother's Net Income*

 The district court calculated the mother's monthly net income in two ways because it was uncertain as to whether or not the social security benefits, which the mother received on behalf of her two oldest daughters, should be considered as being a part of her monthly net income. In one calculation, the district court included the social security benefits, and, in the other calculation, the district court excluded these payments. The social security benefits belonged to the two girls and, therefore, were not income for the mother. Accordingly, they cannot be included as a part of the mother's monthly net income.

### 5. *Mother's Sporadic Income*

 The district court reduced the mother's net monthly income by $125 even though her financial affidavit indicated that her monthly net income included this amount. The mother testified that she periodically attended workshops and that the two pay stubs attached to her financial affidavit did not accurately represent her current income because they included extra pay she had received for participating in workshops.

It appears to us that the mother's testimony supported the district court's finding that her financial affidavit was overstated due to the sporadic income being included. The mother received these payments only two or three times a year, and the amount and frequency of the payments were variable.

We, accordingly, agree with the district court's decision to reduce the mother's monthly net income by the amount of these sporadic payments.

### 6. *Presumptive Support Calculations*

In calculating the father's monthly net earnings, we averaged the net regular pay that he received over a five-month period beginning with the March 14, 1997, paycheck. When the correct variables are inserted into the net income formulas for each parent, the presumptive support obligations are as follows:

| INCOME | FATHER | MOTHER |
| --- | --- | --- |
| Monthly Earnings From Employment | $1,643.94 | $1,824.00 |
| Retirement Plan Growth Income | 165.00 | 135.00 |
| **Total Income** | **$1,808.94** | **$1,959.00** |

| | Net Income | Combined Net Income | % Owed By Each | Presumptive Support Amount | Presumptive Support Obligation |
| --- | --- | --- | --- | --- | --- |
| Father | $1,808.94 | $3,767.94 | 48% | $1,311.83 | $629.68 |
| Mother | $1,959.00 | $3,767.94 | 52% | $1,311.83 | $682.15 |

Wyo. Stat. § 20–6–304(a)(iv) (1997). The proper calculation of the net income formulas demonstrates that the father's presumptive support obligation would be $629.68 per month, which would be $300.32 less than his current monthly obligation of $930. In order for the father to establish that his support obligation would change by at least twenty percent, he had to prove that his support amount would be changed by at least $186. Wyo. Stat. § 20–6–306(a) (1997). The decrease of $300.32 is more than a twenty percent change from the amount in the existing child support order; therefore, we are required to "consider there to be a change of circumstances sufficient to justify the modification of the support order." *Id. See also Sharpe v. Sharpe,* 902 P.2d 210, 214 (Wyo. 1995).

### B. Deviation From Presumptive Child Support

Deviation from the presumptive child support is allowed when the district court finds that it would be unjust or inappropriate to apply the presumptive support obligation. Wyo. Stat. § 20–6–302(b) (1997); *Sharpe,* 902 P.2d at 214. The father contends that the district court did not make a specific finding that applying the presumptive child support would be "unjust" or "inappropriate." The mother argues that, even though the district court did not use the words "unjust" or "inappropriate," it properly considered various factors and correctly determined that a deviation was warranted.

In deciding to deviate from the presumptive child support, the district court reasoned:

> In any event, I decline to reduce his child support. And even if you consider the $1500 a month Social Security for the children, I find that I should deviate from the guidelines support and continue his support at the amount of $930 per month for several reasons.
>
> First of all, he is voluntarily underemployed. The evidence is abundantly clear that were he not—had he not committed this offense he would not have lost his job and he would be receiving substantially greater income and benefits as a result of employment at the coal mine.
>
> So I suppose you can argue that well, he didn't intentionally go out and quit his job. True, but he did intentionally commit the acts to those girls, which in a natural sequence of events resulted in his termination. . So that's Number 1.
>
> Number 2 is that I think the evidence is also pretty clear that once released from the Community Alternatives program he will be capable of earning even greater income than he earns now.
>
> And unless somebody is playing fast and loose with the statutes, it would seem that his release from that facility ought to be [im]minent, because the statute says in

order to be included in that program they have to be within about nine months of their release date, and he's now been in there for nine months.

So unless somebody is playing games, he would be pretty close to being eligible to be released from that facility in any event.

And the third factor that I've considered in that is that these children have additional expenses because of their health, health care needs because of their counseling needs, which is a direct result of his actions.

Therefore for those reasons even if I were to attribute the $1500 per month Social Security to Mrs. Wood I would deviate from the guidelines.

. . . .

And by the way, that was another factor that I took into consideration in not changing his $930 per month child support amount is that he has $60,000 or so in that retirement, plus he has other retirement funds which apparently are vested and he will be the recipient of those funds either when he turns the age of retirement or apparently under some conditions that a reduced amount almost immediately.

■ We agree with the mother that the district court was not required to use the words "unjust" or "inappropriate" in its finding that a deviation from the presumptive child support was warranted. As long as it was clear from the findings that the district court determined that applying the presumptive child support would be unjust or inappropriate, those specific words are not necessary. We must, however, analyze the reasons the district court gave for deciding to deviate so that we may determine whether or not they justify departing from the presumptive child support.[1]

### 1. *Voluntarily Underemployed*

■ The first reason the district court gave for deviating from the presumptive amount was that the father was voluntarily underemployed because he voluntarily com-

mitted a crime, thereby limiting his employment options. The statute that permits a court to consider voluntary underemployment as a reason for deviating from the presumptive child support provides:

(b) A court may deviate from the presumptive child support established by W.S. 20–6–304 upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. In any case where the court has deviated from the presumptive child support, the reasons therefor shall be specifically set forth fully in the order or decree. In determining whether to deviate from the presumptive child support established by W.S. 20–6–304, the court shall consider the following factors:

. . .

(xi) Whether either parent is voluntarily unemployed or underemployed. In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In making that determination the court shall consider:

(A) Prior employment experience and history;

(B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;

(C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;

(D) Availability of employment for which the parent is qualified;

(E) Prevailing wage rates in the local area;

(F) Special skills or training; and

(G) Whether the parent is realistically able to earn imputed income.

WYO. STAT. § 20–6–302(b)(xi) (1997). Although this statute does not explain how to determine whether or not a parent is voluntarily underemployed, it illustrates what types of situations qualify a parent as being

---

1. The mother lists many reasons why the court was justified in deviating from the presumptive child support. We will, however, limit our dis- cussion to the reasons given by the trial court for departing from the amount calculated under the guidelines.

voluntarily underemployed. The legislature obviously did not contemplate voluntarily committing a crime when it enacted this statute.

■ The evidence revealed that the father tried to obtain the best paying job that he could under the circumstances. His ability to work was limited by his inability to travel overnight and by the fact that he was staying at Community Alternatives of Casper rather than in Gillette where the higher paying jobs were located. Additionally, although the father attended truck driving school and obtained his commercial driver's license during his incarceration, he was not able to utilize that license due to the restrictions at Community Alternatives of Casper. He even found temporary employment for the week when bad weather shut down his construction job. We conclude that the father made a good faith effort to find the highest paying job possible, given his situation, and that he was not voluntarily underemployed. *Manners v. Manners,* 706 P.2d 671, 675 (Wyo. 1985).

### 2. *Imminent Release From Community Alternatives of Casper*

■ The second reason the district court gave for deviating from the presumptive amount was that, because the father's release from Community Alternatives of Casper was imminent, his earning ability would soon increase. The statute relating to transferring an inmate to Community Alternatives of Casper provides in part:

(a) Subject to subsection (b) of this section, and upon recommendation of the warden or superintendent of the institution, the department may transfer an adult inmate to a residential community correctional facility.

(b) A transfer of an inmate to a residential community correctional facility under this section may be made only if:

. . .

(iii) The inmate is within at least nine (9) months of his parole eligibility date

and his conduct during his confinement has been such that he will likely be released on parole within nine (9) months[.]

WYO. STAT. § 7–18–109 (1997). The district court misinterpreted this statute when it found that, because the father had been at Community Alternatives of Casper for nine months, his release was imminent. The statute requires an inmate to be within at least nine months of his parole eligibility date, which does not necessarily translate to being within nine months of his release. Because the record did not contain other evidence to support the district court's finding that the father's release was imminent, we conclude that the district court improperly relied upon this factor in deviating from the presumptive child support.

### 3. *Medical Expenses*

■ Another reason the district court gave for deviating from the presumptive amount was that the children will incur additional expenses for the counseling that was precipitated by the father's actions. The mother testified that the children had attended some counseling and will need periodic counseling in the future. The implication from her testimony, however, was that the children had not required much counseling in the past and that the frequency of future counseling was uncertain. Because the divorce decree required the father to pay one-half of the medical and counseling expenses the children may incur, we conclude that this factor did not justify deviating from the presumptive child support.

### 4. *Father's Assets*

The last reason the district court gave for deviating from the presumptive child support was that the father had retirement funds from which he could pay child support.[2] The father asserts that the district court should have considered only his monthly net income and not his assets in determining whether or not a sufficient change in circumstances warranted modifying the existing child support order.

2. The trial court also reasoned that, according to its calculations, the father qualified for the twenty percent reduction by only $42.96 and that such a minimal qualification justified the deviation. Because our calculations show that the father's support obligation would decrease by $300.32, the qualification was not minimal and we would not serve any purpose by addressing this factor.

We note that, because the father's assets were considered in determining the initial child support, his failure to appeal from the child support order makes it improper for him to assert this position now. *Goody*, 939 P.2d at 733. We, nevertheless, direct the father's attention to *Glenn v. Glenn*, 848 P.2d 819 (Wyo.1993). In that case, we adopted the rule providing that an incarcerated parent's assets or income may be applied against the child support obligation. 848 P.2d at 822.

Although the district court could properly consider the incarcerated parent's assets in determining whether or not a deviation from the presumptive child support was justified, a large deviation on the basis of this factor alone was not warranted in this case. We understand the district court's indifference toward the father, given the despicable crime that he committed. The father, however, is being adequately punished for his crime in the eyes of the law, and the district court should not treat him unfairly in this proceeding for the purpose of punishing him further.

### C. Lien on Retirement Accounts

The father claims that the district court improperly ordered that a lien be placed on his retirement accounts to secure the payment of his child support obligation. He maintains that his retirement plans were exempt under Section 1–20–110 of the Wyoming statutes. The mother counters that the father did not prove that his plans were exempt and that the evidence indicated they were not exempt.

The evidence in the record is not sufficient to allow us to decide this claim. We, therefore, remand this issue for further consideration by the district court.

### D. Frivolous Appeal

The mother claims that the father did not have a reasonable cause for bringing this appeal and asks us to award her fees and costs pursuant to Rule 10.05 of the Wyoming Rules of Appellate Procedure. Sanctions under this rule are not available when the appeal challenges a discretionary ruling that was made by the district court. *Russell v. Russell*, 948 P.2d 1351, 1356 (Wyo.

1997). Because the issues in this case questioned discretionary rulings, we deny the mother's request.

### CONCLUSION

The district court abused its discretion by incorrectly calculating the father's and the mother's monthly net incomes and by deviating from the presumptive child support. We hold that the father's child support obligation must be reduced to reflect the amount calculated under the child support guidelines. If, once the father has been released from Community Alternatives of Casper, he is able to obtain more gainful employment, the mother may move for a modification to reflect the father's increased income. If the father does not find more profitable employment upon his release, the mother might be able to prove at that time that he is voluntarily underemployed.

Reversed and remanded.