2005 WY 6

**Timothy Wayne GROENSTEIN, Appellant (Plaintiff),**

v.

**Yasmine Elizabeth GROENSTEIN, Appellee (Defendant).**

No. 04–60.

Supreme Court of Wyoming.

Jan. 19, 2005.

Representing Appellant: Mark Charles Anzman, Cheyenne, WY. Argument by Mr. Anzman.

Representing Appellee: Lynda G. Cook, Cheyenne, WY. Argument by Ms. Cook.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J., Retired.

STEBNER, District Judge, Retired.

[¶ 1] Timothy Groenstein (Father) filed for divorce from Yasmine Groenstein (Mother). The couple has one child. Father appeals the divorce decree entered by the district court. Father claims that the district court abused its discretion in determining child custody and child support. We affirm in part and reverse in part.

## ISSUES

[¶ 2] Father states the issues as:

1. Did the district court abuse its discretion in deciding that Defendant should have custody of the parties' son, [ ]?

2. Did the district court abuse its discretion by determining Plaintiff's child support obligation without giving any consideration to benefits paid to his son, [ ], by

the Social Security Administration on account of his father's disability?

3.  Did the district court abuse its discretion in determining the amount of child support owed by Plaintiff by imputing income to him based on a 10% annual return on his investment portfolio?

4.  Did the district court abuse its discretion in determining the amount of imputed income attributed to the Defendant when computing child support?

Mother rephrases the issues as:

1.  Was the district court's award of primary custody to the mother a reasonable choice under the circumstances, giving full consideration to the best interests of the child and the evidence presented?

2.  Was the district court's decision not to consider social security disability payments to the minor child in computing income and determining the child support obligation of the father a reasonable choice?

3.  Was the district court's award of child support based on imputed income from an investment portfolio a reasonable choice under the circumstances given the evidence presented?

4.  Was the district court's award of child support based on imputed income of Appellee a reasonable choice under the circumstances?

### FACTS

[¶ 3] Mother and Father met in Colombia in November of 2000. After a brief courtship, Mother and Father were married on June 16, 2001, in Jackson, Wyoming. In December of 2001, the couple's son was born. However, Mother's and Father's relationship deteriorated in the months following the child's birth, and Father filed for divorce on May 29, 2002.

[¶ 4] Father is a former computer engineer. In 1985, during back surgery, Father suffered a spinal cord injury at the C–5 level. As a result, Father cannot walk and has lost some of the dexterity in his fingers. However, he uses a manually propelled wheel chair and has lived independently for the last 18 years. He continues to participate in many outdoor activities, and also repairs his own vehicles, cleans his own home, cooks, and does wood and metalworking. Father is not employed, but has a considerable investment portfolio funded by a settlement of the malpractice suit stemming from his injury.

[¶ 5] Mother is a citizen of Colombia. In 1985, she obtained a degree from New York University in business administration and finance. Upon earning her business degree, Mother worked as the operations manager at a large corporation. After several years, Mother returned to school in Bogotá, Colombia and obtained a degree in fashion design. Following her schooling in Bogotá, Mother worked in the fashion industry for several years before taking a position as a financial planner. During the parties' courtship and marriage Mother was not employed. In the months following the couple's separation, Mother began working about 20 hours a week at three part-time jobs.

[¶ 6] Before trial, the district court appointed a special master to make recommendations on the various aspects of the case. A guardian ad litem (GAL) was also appointed to represent the best interests of the child. After a hearing, the special master issued his report and recommendations to the court regarding temporary custody, visitation, and support. The special master noted that both parties demonstrated "a good deal of love and concern" for the child and that there was no evidence to suggest that either parent was unfit. The special master then found that it was in the best interests of the child to award Mother temporary primary physical custody and Father liberal visitation. This recommendation was due in part to the child's tender age.

[¶ 7] When calculating temporary child support, the special master noted that it was difficult to do so because neither party had a real source of income. At that time Mother did not work, and Father's income derived from social security disability payments and income on his investments. The special master found that, because of market difficulties at the time, Father's income had almost ceased. He therefore decided to impute the statutory rate of interest on Father's investment portfolio. See Wyo. Stat. Ann. § 1–16–102. His recommendation stated:

In this case, [Father] has an investment portfolio valued (as of the date of the hearing) at $735,000.00. Imputing a statutory rate of interest on that sum would yield [an] annual gross income of $73,500.00. Reducing that amount by a tax rate of 36% would yield a net annual income of $49,245.00 or a monthly net income of $4,103.00.[1]

The special master also imputed net income of $500 to Mother. Following the special master's report, the court ordered temporary support and custody in conformity with the special master's recommendation.

[¶ 8] A trial to the district court took place in September of 2003. Both parties presented evidence regarding their parenting skills and finances. Prior to trial, the parties received an evaluation from a custody evaluation expert, Dr. Steven Nelson. Dr. Nelson testified at trial that he recommended a shared custody arrangement with physical visitation of three days with one overnight visitation. The GAL recommended that Mother have primary custody. As ordered in the Divorce Decree, the district court found that shared custody was not appropriate, and found that Mother should have primary care, custody, and control of the child subject to Father's liberal visitation. The parties had previously stipulated to Father having visitation on three days. The district court found that this three-day visitation was working well and should not be changed and also ordered overnight visitation at Father's house every other weekend.

[¶ 9] The district court additionally found that Mother was working 20 hours a week at three part-time jobs but determined that Mother was capable of working 40 hours a week and thus found Mother voluntarily underemployed and imputed Mother's net income at $1,400 per month. The district court also found that Father was voluntarily unemployed and used the special master's calculation of imputed income to impute income to Father. The district court reasoned,

[Father's] income is derived from his investment portfolio, a $1,290.00 monthly Social Security Disability Insurance benefit and a $674.00 monthly social security benefit for the [child]. [Father] has not filed a Financial Affidavit and the testimony at trial is unclear as to [Father's] income. Therefore, the Court is relying upon [the special master's] finding of imputed net income of $4,103.00.

Father appeals.

### STANDARD OF REVIEW

[¶ 10] This court recently reiterated the appropriate standard of review for cases involving these issues.

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo.1997); *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo*, 907 P.2d 348, 352 (Wyo.1995). It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. *Scherer*, 931 P.2d at 254; *Rowan v. Rowan*, 786 P.2d 886, 890 (Wyo.1990); *see also Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995) and *Fink v. Fink*, 685 P.2d 34, 36 (Wyo.1984). The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink*, 685 P.2d at 36.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circum-

---

1. We are slightly puzzled by the net annual income figure of $49,245 because, according to our calculations, $73,500 reduced by 36% equals $47,040. However, we would note that $73,500 reduced by 33% equals $49,245. We are not sure whether the special master intended to use a 33% tax rate and the "36%" noted in the recommendation was an error, or whether he intended to use 36% tax rate and the "$49,245" noted in the recommendation was in error, or if something else altogether was contemplated. In any event, as we will see in the discussion below, the reason that this is important for our purposes is to determine if either Father's social security payments or the social security payments made to the child were figured into the monthly net income figure. We conclude they were not, as that calculation (regardless a of 33% or 36% tax rate) yields a much higher number.

stances. *Pinther v. Pinther,* 888 P.2d 1250, 1252 (Wyo.1995) (*quoting Dowdy v. Dowdy,* 864 P.2d 439, 440 (Wyo.1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs,* 920 P.2d at 657; *Cranston v. Cranston,* 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones,* 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' " *Triggs,* 920 P.2d at 657 (*quoting Vanasse v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993)).

*Pahl v. Pahl,* 2004 WY 40, ¶ 6, 87 P.3d 1250, ¶ 6 (Wyo.2004) (quoting *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998)).

### *DISCUSSION*

#### *Custody*

■ [¶ 11] Father contends that the district court abused its discretion in granting primary custody to Mother. He claims that the district court failed to consider three factors. First, he claims that because Dr. Nelson recommended a shared custody arrangement, the district court ignored Dr. Nelson's findings and recommendations. Second, he claims that the district court ignored the risk that Mother could return to Colombia and effectively deny Father any further contact with his son. Third, he claims that the district court ignored the fact that Mother would have to place the child in daycare while Father was available full-time to care for the child. We do not agree that the district court abused its discretion in determining custody.

■ [¶ 12] As this court has noted many times before, Wyoming statutes require a district court to consider an array of factors in reaching a custody decision. See Wyo. Stat. Ann. § 20–2–201 (LexisNexis 2003). "Depending on the case, different factors will present a greater need for emphasis. Additionally, 'a process of this kind could readily swing the balance toward one party despite there being a material factor in favor of the other party.' " *Pahl,* ¶ 10 (quoting *Produit v. Produit,* 2001 WY 123, ¶ 22, 35 P.3d 1240, ¶ 22 (Wyo.2001)). The emphasis throughout the entire process is the best interest of the child in that particular family. *Pahl,* ¶ 10. Therefore, as with all child custody decisions, we must determine whether in this case the district court weighed the relevant factors to determine what was in the best interests of this child. *Id.* We would note at the outset that both parents were fit parents who loved their child. Mother was the primary caretaker. However, it was noted that both parents were better than adequate. In that sense, it appears that most of the statutory factors failed to weigh heavily in one parent's favor. We therefore examine the factors Father claims the district court failed to consider.

[¶ 13] We begin with Dr. Nelson's testimony and recommendation. Dr. Nelson evaluated Father and Mother prior to trial. During the course of his testimony he noted that both parents had a lot to offer the child. He suggested that the physical visitation arrangement of three days a week was appropriate. He also made a recommendation for shared custody. In looking at the record and divorce decree, it appears that the district court did not ignore Dr. Nelson's testimony. In fact, the court followed Dr. Nelson's recommmendation regarding physical custody fairly closely. The court ordered exactly three days of visitation and added an overnight visitation.

[¶ 14] It is likewise clear that the district court considered a shared custody arrangement because the district court specifically addressed shared custody in the divorce decree. Therein the court stated: "This is not an appropriate case for shared or joint custody. These parties appear to have very little ability to cooperate. Communication between the two is very limited and, at most times, unsuccessful." We conclude that the record supports the district court's finding on this matter. Testimony showed that the parties had a hard time getting along. Father

and Mother often had little to no communication. Father regarded Mother's attempts to communicate as "telling him what to do" and had no interest in working on communication. We therefore determine that the district court did not ignore Dr. Nelson's recommendation, but instead decided that shared custody would be inappropriate.

[¶ 15] Second, the evidence presented at trial included testimony about the dangers of living in Colombia. The risk of a parent moving internationally is one of the many factors for the district court to consider. See *Stonham v. Widiastuti*, 2003 WY 157, ¶¶ 14–19, 79 P.3d 1188, ¶¶ 14–19 (Wyo. 2003) and *Pahl*, ¶ 22. Certainly, as we noted in *Stonham*, international elements complicate custody matters. However, based on the testimony presented at trial, it appears that an international move was not an immediate concern. Although Mother was from Colombia and Father asserted that she had threatened to move back there with the child, Mother clearly testified that she had no intention of moving to Colombia. Dr. Nelson similarly testified that Mother never said anything other than that she was planning to stay. Furthermore, Mother testified that she could not travel to Colombia with the child without Father's signed consent. The district court is placed in the position to assess the credibility of witnesses. *Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250, ¶ 10 (Wyo.2003). We do not reweigh the evidence; and, as noted in our standard of review, we afford the prevailing party every favorable inference from conflicting evidence. *Pahl*, ¶ 6. We consequently conclude that the district court could reasonably determine that a move to Colombia was not a true concern and decide to not factor such a move into its custody decision.

[¶ 16] Third, the district court did not specifically mention the daycare issue in the divorce decree. However, Dr. Nelson testified that daycare was appropriate for the child rather than placing the child with Father because it "provided a good opportunity for social engagement" for the child. Once again, the district court could weigh this testimony to decide that this factor did not favor Father.

[¶ 17] Considering Father's three claims, we conclude that the district court considered all the relevant factors and made a reasoned decision. We therefore hold that the district court did not abuse its discretion in making its custody determination. In cases such as this where it is apparent that both parents love and care for their child and are fit and competent to have custody, the custody determination is difficult and demanding. See *Pahl*, ¶ 9. Nevertheless, a custody determination must be made, and the district court has wide discretion in making it. In this instance, the district court did not abuse that discretion.

### Child Support

[¶ 18] Father claims three errors in the district court's calculation of child support. The first is that the district court failed to consider the dependent payments the child was receiving from the Social Security Administration for Father's disability. Father asserts that those amounts should be used to offset his support obligation. Second, Father claims that the district court erred in imputing income based on the statutory rate for unsatisfied judgments. He argues that this was not a realistic amount to impute given that his investments were earning much less than that amount. Third, Father claims that the district court erred in the amount of income that it imputed to Mother. He maintains that, based on her education, the district court should have imputed a higher income to Mother. We will consider the arguments in turn.

[¶ 19] This court has addressed dependent social security benefits in the child support setting before. In *Hinckley v. Hinckley*, 812 P.2d 907 (Wyo.1991), we considered a case where the children began receiving social security benefits because their father was granted social security disability after a divorce. When discussing the issue of that case we noted: "The question is whether we should allow the obligor to unilaterally apply Social Security benefits that are received by his children to fulfill his obligation." *Id.*, at 911. After acknowledging that a number of courts allowed a credit to the non-custodial parent for social security benefits paid to the

children, we adopted the rule that "the receipt of payments from Social Security by the children of one obligated to pay child support may constitute a change of circumstances giving rise to justification for a petition for modification·of the decree." *Id.* at 911. We then held that those benefits are one factor to be considered by the district court in determining whether a material change of circumstances has occurred, but that other changes must also be considered. *Id.* The primary message of our decision, however, was that the obligor must petition the court for modification instead of unilaterally reducing his payment. *Id.* at 912

[¶ 20] Importantly for our purposes today, in *Hinckley* we recognized that when determining child support, a court must consider social security benefits received by the child as a factor. *Id.* at 912. However, we did not dictate how a district court must account for these payments and seemed to largely leave it as a matter of district court discretion. Likewise, we did not directly address what to do with these dependency benefits in an initial support determination because in *Hinckley* we were addressing a party seeking modification of an existing order.

[¶ 21] Next, in *Wood v. Wood,* 964 P.2d 1259 (Wyo.1998), we found that the district court was correct in not including social security benefits paid for the benefit of the children in the support calculation. In *Wood* the mother had two daughters from a previous marriage. The daughters were eligible for, and the wife received on their behalf, monthly social security benefits because their biological father had passed away. *Id.* at 1263. The mother's second husband adopted the girls, and the couple also had two more children. When the parties divorced, it was argued that the social security benefits for the two girls should be attributed to the mother as income. We stated: "The social security benefits belonged to the two girls and,·therefore, were not income for the mother. Accordingly, they cannot be included as a part· of the mother's monthly net income." *Id.* at 1264. However, there is a significant difference between the circumstances of *Wood* and the instant case. Be-

cause the benefits were the result of the girls' deceased biological father, they were not attributable to the social security contributions of either parent involved in the support calculation. Certainly, in the *Wood* circumstances, it makes sense to not include the social security benefits as net income for the mother. Indeed, the circumstances of *Wood* were different enough from *Hinckley* that we did not even find that the district court had to consider those payments as a factor in its support calculation. We, therefore, conclude that we have not specifically addressed how dependent social security benefits should be considered in circumstances such as those presented in this case.

[¶ 22] In determining how these dependency benefits should be treated, it is important to consider the nature of the social security payments which both Father and the child receive. The benefits paid in this case are often referred to as Social Security Disability Insurance (SSDI). People qualifying for SSDI·are those who contributed to the social security program while they were working. *New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir.1990). SSDI benefits must not be confused with Supplemental Security Income (SSI), which is a wealth-based program providing for individuals whose income does not meet a specific amount. SSI covers those who have never contributed to the system and therefore do not qualify for SSDI. *Id.* In *Hinckley,* at 910–11 (quoting *Andler v. Andler,* 217 Kan. 538, 538 P.2d 649, 653 (1975)), we noted the nature of disability payments: ·

> ·The United States Congress has seen fit to place the federal government in the role of insurer in order to afford members of the · work force the protection and security of insurance against future disability. The fundamental nature of the Social Security system is a form of insurance in every sense of that word. Benefits paid out by a governmental insurer, under a policy of insurance for which the insured has paid premiums, are· no more gratuitous than benefits paid out by a private insurance company. ·

This justification is often given for deciding to credit the disabled parent's support obli-

gation with the payment made to the child. Father urges us to adopt this reasoning and credit his support obligation by the amount the child receives. However, we believe Father misses an important step. Before deciding whether to credit the parent, we must begin with deciding whether to include the child's payment in Father's income.

[¶ 23] A thorough and helpful discussion of this topic can be found in Tori R.A. Kricken, *Child Support and Social Security Dependent Benefits: A Comprehensive Analysis and Proposal for Wyoming*, 2 Wyo. L.Rev. 39 (2002). After an in-depth analysis including how various states deal with SSDI, Ms. Kricken suggests that "Wyoming should follow the majority lead of incorporating the benefit payments into the obligor-parent's income and, subsequently, allowing a set-off of his support obligations." *Id.* at 88. We believe this to be the correct approach.

[¶ 24] The Wyoming child support statutes provide that a child support obligation shall be determined considering the combined income of both parents. Wyo. Stat. Ann. § 20–2–304. Income is defined as:

any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include.... In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, food stamps and supplemental security income (SSI) shall not be considered income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed.

Wyo. Stat. Ann. § 20–2–303(a)(ii) (LexisNexis 2003). The statute specifically uses the word "individual" so an argument could be made that the payment must go specifically to the parent to be included as income. However, as can be seen, the definition of income is very broad. For instance, it includes the phrases "regardless of source," "includes but is not limited to," and "any other payments made by any payor." These phrases indicate the legislature's attempt to include many different sources of income and should therefore be interpreted broadly.

[¶ 25] While the definition does not specifically include SSDI paid to the child, it does include worker's compensation payments, disability benefits, and annuity and retirement benefits. It is, therefore, apparent that the disability payments received by the parent must be included in income. The same reasoning can be used to include the dependency benefits. SSDI paid to the child is also a "disability" benefit. They are in a sense insurance proceeds paid on the occurrence of the parent's disability. While they are paid for the benefit of the child, those amounts were earned and paid for by the disabled parent. Furthermore, the statute specifically excludes "means tested" sources of income, such as SSI. Accordingly, it is clear that the legislature was well aware of the various types of social security payments. Had the Wyoming Legislature wanted to exclude dependent benefits from the definition of income, it would have listed them among the exclusions. See Kricken, at 56.

[¶ 26] The Kansas Supreme Court reasons:

The Social Security Administration provides benefits for minor children whose parent(s) is (are) disabled. The minor children are considered beneficiaries of the benefits earned and paid for by their parents under the Social Security Act. The money given under this program is an unqualified grant of money to be used as the minor's guardian determines.

*Andler v. Andler*, 217 Kan. 538, 538 P.2d 649, 651 (1975). Other courts "have been careful to point out that, unlike welfare and other forms of public assistance, social security benefits represent contributions that a worker has made throughout the course of employment; in this sense, benefits represent earnings in much the same way as do annui-

ties paid by an insurance policy." *Miller v. Miller*, 890 P.2d 574, 576 (Alaska 1995).

[¶ 27] This appears to be the majority view. For instance in Washington, courts have noted that:

> Common sense also dictates that all disability payments be considered income of the disabled parent. Disability payments substitute for earned income. Were the parent not disabled, the parent would continue to earn income which would be counted as parental income. The substitutionary disability payments should similarly be counted as parental income. The payments are made directly to the children, or custodial spouse, to protect the children and insure that the payments are used for the children's benefit. But paying the child directly does not transform this substitute for the parent's earnings into income for the child.

*Maples v. Maples*, 78 Wash.App. 696, 899 P.2d 1, 5 (1995). Alaska courts have found that "[a]lthough the benefits are payable directly to the child rather than through the contributing parent, the child's entitlement to payment derives from the parent, and the payments themselves represent earnings from the parent's past contributions." *Miller*, at 577 (discussing social security retirement benefits, but concluding that there is no difference between retirement benefits and disability benefits for child support purposes.) In Oklahoma the reasoning is similar: "Social Security benefits are analogous to private insurance, where a parent insures against his ability to fulfill moral and legal obligations due his minor children. The payments to a minor child are a direct result of the earnings and payments of the parent through his prior employment." *Wilson v. Stenwall*, 868 P.2d 1317, 1319 (Okla.App. 1992).

[¶ 28] When noting what other courts had done when faced with this question, the Connecticut Supreme Court noted, " 'These payments are for the purpose of replacing income lost because of the employee's inability to work upon becoming disabled.' The benefits 'are not gratuities but are earned, and they substitute for lost earning power because of the disability.' " *Jenkins v. Jenkins*, 243 Conn. 584, 704 A.2d 231, 235 (1998) (citations omitted). The *Jenkins* court goes on to reason that child support calculations are based on the concept that the child should receive the same proportion of parental income as he or she would have received if the parents had remained together. Because both the disability income received by the disabled parent and the dependency benefits received by the children would have been available to support the children if the family had remained intact, those amounts should be included in the child support calculation. The failure to include these benefits in the disabled parent's gross income leads to child support based on an income figure that does not accurately reflect the income available to the family unit. *Id.*

[¶ 29] We agree with the reasoning of these courts. Because dependency benefits represent an amount earned through the parent's contributions to the social security program, it is proper to include those amounts in the disabled parent's income. We likewise agree that including those amounts in the parent's income accurately reflects the funds available to support the child, which will result in a more appropriate support calculation. Therefore, the funds paid to the child must be included in the disabled parent's income.

[¶ 30] Logically then, we must also conclude that the same amount must be credited to the disabled parent's support obligation once the appropriate amount of presumptive child support is calculated. "The majority view ... regards social security benefits [paid to the dependent children] as earnings of the contributing parent and, for this reason, allows benefits paid to a child on the parent's behalf to be credited toward child support obligations." *Miller v. Miller*, at 577; see also Kricken, at 62 n. 86 (collecting cases). Indeed, "[m]ore than thirty states have allowed a credit to the noncustodial parent for SSDI dependency benefits or for Social Security retirement benefits paid to the minor children of the noncustodial parent." *Rosenberg v. Merida*, 428 Mass. 182, 697 N.E.2d 987, 990 (1998) (citing Michael A. DiSabatino, Annotation, *Right to Credit on Child Support Payments for Social*

*Security or Other Government Dependency Payments Made for the Benefit of Child,* 34 A.L.R. 5th 447, 469–87 (1995)). As noted above, these amounts represent contributions that the worker has made throughout the course of his employment, thus the payment to the child derives from the parent. *Miller,* at 577. Therefore, these amounts should be regarded as a substitute for support payments from the disabled parent.[2]

[¶ 31] We conclude that this method allows for a just calculation of child support and hold that it is the method district courts should employ when considering dependency benefits in an initial child support calculation. Of course, as always, Wyo. Stat. Ann. § 20-2-307(b) allows the district court to deviate from the presumptive child support amount. Should these calculations result in an unjust or inappropriate amount of support under the circumstances, the district court always has the power to adjust the amount through deviation.

[¶ 32] Father's second claim regarding child support is that the court incorrectly calculated Father's income on his investments. As noted in the fact section, the district court used a monthly $4,103 income figure for Father based on a 10% statutory rate applied to the value of his investments. See Wyo. Stat. Ann § 1-16-102. According to the special master's calculations, this figure did not include Father's social security benefit or the benefit paid to the child. Furthermore, it is clear that 10% is not based on any actual return on Father's investments.

[¶ 33] As the district court recognized, Father's income is made up of three components: Father's disability payments, the disability payments made to the child, and income on Father's investments. Although the district court recognized these three components, it appears that none of these actual amounts were used to calculate the $4,103 monthly net income figure attributed to Father. Instead, a 10% statutory rate of interest on Father's investments was used as an estimate of Father's total income. We find this to be an inappropriate method of calcu-

lating income in these circumstances. Father's disability benefit and the child's SSDI benefit were easily ascertainable amounts. Indeed, the district court noted these amounts in the divorce decree. Thus, the only portion of Father's income that was not readily ascertainable was his income from investments.

[¶ 34] It appears from the trial transcript that Father submitted investment statements and five years worth of tax returns to prove his income from investments. However, those documents were not designated as part of the record on appeal, and consequently we cannot determine what financial information those documents provided. Additionally, as the district court noted, Father did not file a financial affidavit. Father bears the burden of proving his income. When he fails to file a financial affidavit, he does so at his peril because the trial court enjoys wide latitude in determining income when a parent has not provided the records necessary to make the findings in strict conformity with the statute. See *Fountain v. Mitros,* 968 P.2d 934, 938 (Wyo.1998).

[¶ 35] Nevertheless, the district court must still use a reasonable method for determining income. Simply applying the statutory rate of interest for unpaid judgments to Father's investment portfolio to estimate Father's entire income bears no rational relationship to Father's actual income. Given the lack of financial information, the district court is certainly well within its discretion to decide that 10% is the amount that Father is earning and can expect to earn on his investments. However, the interest rate used should be based on some reasonable relationship to Father's actual investment income, not simply the statutory rate of interest. We cannot determine whether the district court believes 10% to be a reasonable estimate of Father's investment income or if the court intended 10% to be used only if estimating Father's entire income. Nevertheless because we are remanding this case for other reasons, the district court can determine whether the 10% rate is a reasonable interest rate to estimate Father's investment income.

---

**2.** Should the support obligation be less than the dependency benefit, the non-custodial parent owes no additional amount, but he is not entitled to a rebate.

Then, whatever amount the district court decides is suitable to estimate Father's income from investments, that amount should be added to Father's disability payment, and the child's disability payment to arrive at an appropriate monthly net income figure.

[¶ 36] Finally, the third mistake Father claims in the support calculation is that the district court abused its discretion in the amount of income it imputed to Mother. The district court imputed income to Mother in the amount of $1,400 per month, finding that Mother was voluntarily underemployed. Father asserts that this amount should have been higher based on Mother's education. While Father is correct that Mother has significant educational training in both finance and fashion design, there was no testimony that those jobs were available to Mother in Jackson. At the time of trial Mother worked at three separate part-time jobs. The district court heard testimony that the higher paying of those jobs had time limitations, and Mother could not increase her hours of work at those places. The only place where she could increase her work paid $10 per hour. It was entirely reasonable for the district court to impute income at this rate. *Durham v. Durham*, 2003 WY 95, ¶ 12, 74 P.3d 1230, ¶ 12 (Wyo.2003). We therefore conclude that the district court did not abuse its discretion in imputing income at this rate.

[¶ 37] We find that the district court did abuse its discretion in determining child support. All the components of Father's income must be correctly accounted for. The portion of the district court's judgment regarding child support must, therefore, be reversed for a correct calculation in conformity with our above discussion.

## CONCLUSION

[¶ 38] For the reasons expressed above, we affirm in part and reverse in part. The district court's judgment with regard to custody is affirmed. The district court's determination of child support is reversed and remanded for a proper calculation.